# THE STATE v. CHARLES OLDHAM, Appellant.

### Division Two, December 22, 1906.

1. **RACE TRACK: Betting: Evil Aimed At.** The book-making and pool-selling act of 1905, commonly known as the Race Track law, is not leveled at betting on horse racing. The evil it undertook to prohibit was the keeping of a shed, room, tent, booth or building wherein are kept books, instruments and devices for the purpose of recording or registering bets or the selling of pools, which may be used to tempt and seduce the public into the vicious practice of gambling.

2. ———: **Registering Bets: By Another.** The third subdivision of the Race Track act authorizes a conviction of a defendant who knowingly permits a booth under his charge to be used or occupied by another person with a book, instruments or device for the purpose of recording or registering bets.

3. ———: ———: ———: **Pleading.** To make a good charge under the third subdivision of said act, it is necessary for the indictment to charge who the person was whom the owner or defendant permitted to use or occupy the building, booth or shed, with a book, instrument or device, or if the name of such person is unknown, to so charge the fact.

4. ———: ———: ———: ———: **Implied Charge.** The invariable rule of construction of pleadings in criminal causes, especially in felonies, is that nothing is to be taken by implication.

5. ———: ———: **In Another State.** The Race Track law is broad enough to prohibit the keeping of a building or booth used or occupied by a person with a device, book or instrument for the recording of bets, whether or not such bets are actually made and recorded, or recorded in this State or some other State. It is aimed at persons who keep and maintain in this State the gambling house with its books and devices and paraphernalia for gambling.

6. ———: ———: **What is a Book: Telephone.** A telephone, blackboard and numbered tickets do not constitute a "book, instrument or device for the purpose of recording or registering bets or wagers or selling pools" upon a horse race within the meaning of the Race Track law—the telephone being used by the one in charge of the booth to transmit the bets to another State where they were registered.

State v. Oldham.

7. ———: ———: **Telephone.** A telephone wire with a trans-
mitter and receiver cannot, without doing violence to the
ordinary meaning of the words, be said to be an instrument or
device "for the purpose of recording or registering bets."

8. ———: ———: ———: **Trick to Evade Statute.** The construc-
tion of a telephone line from the race track to a room in a build-
ing in another State for the purpose of having the bets regis-
tered and recorded there may be and is an obvious trick to
evade the penalties and prohibitions of the Race Track statute.
But when a defendant is charged with a crime, the question is
not whether he has successfully evaded the statute, but whether
he has violated it.

Appeal from Jackson Criminal Court.— *Hon. B. J.
Casteel,* Special Judge.

REVERSED.

*Walsh & Morrison* and *Harkless, Crysler & Histed*
for appellant.

(1) · The act of 1905, page 131, prohibited (first)
any person from keeping a room, tenement, shed, booth
or building within the State of Missouri and from oc-
cupying the same with any book, instrument or device
for the purpose of recording or registering bets or
wagers. Second. It prohibited any person from re-
cording or registering a bet or wager within this State,
whether the race was to take place within or without
the State. Third. It prohibited the owner, lessee,
occupant, or person in charge of any room, tenement,
etc., within this State, from permitting the same to be
used for registering or recording bets. Fourth. It
prohibited the owner, lessee, occupant, or person in
charge of any room, tenement, shed, booth or building
within this State, to therein keep, exhibit, use or employ
any device or apparatus for the purpose of recording
such bets, as hereinabove set forth. Laws 1905, p.
131. (2) A citizen of this State, of course, cannot be
convicted because he kept a book or registered or re-

corded bets outside of the State. State v. Gritzner, 134 Mo. 512; Owen v. State, 85 S. W. 794; State v. Shaeffer, 89 Mo. 271; Works, Courts and Jurisdiction, 471; State v. Saunders, 19 Kan. 127; Williams v. Fenniman, 14 Kan. 288. (3) The court submitted the question to the jury on the fourth subdivision above mentioned, which reads, "or therein keeps, exhibits, uses or employs any device or apparatus for the purpose of recording such bets or wagers, as hereinabove set forth." This theory is challenged upon two grounds: 1. That neither the telephone, the blackboard nor the numbered tickets were devices or apparatus for the purpose of recording bets or wagers; and 2. That "such bets or wagers" referred to are bets and wagers made as a result of recording and registering in some place in the State of Missouri, and that the expression, "such bets or wagers as hereinabove set forth," refer only to the ones theretofore mentioned, to-wit, bets and wagers founded upon bookmaking or recording or registering within the State of Missouri. (4) The act in question was levelled against and only against the keeping of a book or the registering or recording of bets within the State and the devices and apparatus must be such as pertain to recording or registering within the State. Stanley v. Railroad, 100 Mo. 435; Said v. Stromberg, 55 Mo. App. 438.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1) Courts will not permit the purpose of a salutary criminal statute to be defeated by a resort to a subterfuge. State v. Townsend, 50 Mo. App. 690; State v. Kentner, 178 Mo. 487; Williams v. State, 92 Tenn. 275; Ransome v. State, 91 Tenn. 717; State v. Thompson, 8 Ohio S. & C. Pl. Dec. 682; Regina v. Osborne, 27 Ontario 185; People v. Barbour, 5 N. Y. Cr. Rep. 381; Ames v. Kirby, 59 Atl. 558; Murphy v.

Board of Police, 11 Abbott's New Cases 337. (2) The act of March 21, 1905, prohibits, not only the registering of bets in Missouri, but it denounces as well the occupation of any betting booth in Missouri with devices for the purpose of registering bets anywhere, either within or without the State. (3) Subject to the Constitution of the United States and of the State, the Legislature has the right to make any act committed in Missouri a crime if it deems that act *contra bonos mores*. State v. Sattley, 131 Mo. 484; Ex parte Roberts, 166 Mo. 207. (4) Interstate commerce can be lawfully interfered with by the provisions of a statute passed under the police power of the State. Lacey v. Palmer, 93 Va. 159; State v. Harbourne, 70 Conn. 484; State v. Stripling, 113 Ala. 120; Ames v. Kirby, 59 Atl. 560; Hennington v. Georgia, 163 U. S. 299; Kidd v. Pearson, 128 U. S. 1; Railroad v. Haber, 169 U. S. 613; Plumley v. Massachusetts, 155 U. S. 461; Geer v. Connecticut, 161 U. S. 519.

GANTT, J.—On the 25th of May, 1906, the grand jury of Jackson county returned an indictment against the defendants, Charles Oldham and J. S. Gardner, for alleged violation of the act of March 21, 1905, Laws 1905, p. 131, which is entitled, "An Act prohibiting book-making and pool-selling, and prescribing a penalty therefor." The indictment contains five counts. The first count in the indictment charges the defendants with making and selling what is commonly called a book and pool, upon a certain horse race to be made and to take place thereafter on the 19th of May, 1906, to one Con Cronin, and divers other persons. The second count charges that the defendants on the 19th of May, 1906, did feloniously, unlawfully and knowingly in Jackson county, Missouri, register and record a bet and wager with the said Con Cronin upon a certain horse in the race thereafter to be run on the said day.

The third count charges that the said defendants at the county of Jackson and State of Missouri, on the 19th of May, 1906, did then and there unlawfully and feloniously keep a room, shed, tenement, booth and building, at and on the premises known as the Elm Ridge Race Track, located at or near Sixty-third street and Lydia avenue in Kansas City, Jackson County, Missouri, and did then and there unlawfully and feloniously keep said room, shed, tenement, booth and building with books, instruments, and devices, to-wit, blackboards, telephones, telegraph instruments, admission cards bearing numbers, and other instruments, books and devices, a more particular description of which is to the grand jurors unknown, for the purpose of recording and registering bets and wagers and selling pools upon the result of a trial of contest of speed, skill or power of endurance between certain beasts, to-wit, horses named as follows, to-wit: Baby Branch, T. Jo, Pauline Cobbs, Pat Kennedy and Castle Gregory, which said contest was to be made and take place thereafter at said Elm Ridge Track aforesaid in the county and State aforesaid on the afternoon of the said 19th day of May, 1906, against the peace and dignity of the State.

The fourth count is in words and figures as follows: "And the grand jurors aforesaid, upon their oaths aforesaid, present and charge that Charles Oldham and J. S. Gardner, at the county of Jackson, State of Missouri, on the 19th day of May, 1906, did then and there being the owners, lessees, occupants and persons in charge of a room, tenement, shed, booth and building located on the premises known as Elm Ridge Race Track, near the intersection of the streets commonly called Sixty-third and Lydia streets, in Kansas City, Jackson county, Missouri, did then and there at the county of Jackson, State of Missouri, unlawfully, knowingly and feloniously permit said rooms, tenements,

shed, booths and building to be used and occupied with a book, blackboard, telephone instrument, telegraph instrument, numbered tickets of admission, pencils, pens and ink and other instruments and devices, a more particular description of which is to the grand jurors unknown, which said books, instruments, devices, to-wit, the book, blackboard, telephone instruments, telegraph instruments, numbered tickets of admission, pencils, pens, ink and other instruments, a more particular description of which is to the grand jurors unknown, as aforesaid, were then and there for the purpose of recording and registering bets and wagers and selling pools upon the result of a trial and contest of skill, speed and power of endurance of beasts, to-wit, certain horses named Baby Branch, T. Jo, Pauline Cobbs, Pat Kennedy and Castle Gregory, which said contest was to be made and take place thereafter at said Elm Ridge Race Track aforesaid, on the afternoon of said 19th day of May, 1906, against the peace and dignity of the State.''

The fifth count after charging in a general way that the defendant did then and there on the 19th day of May, 1906, at the county of Jackson, keep said room, shed, booth, tenement and building with a book, instrument and device, to-wit, a book, telegraph instrument, telephone instrument and blackboard, etc., for the purpose of recording bets and wagers and selling pools on the said horse race, proceeded to charge that the defendants did unlawfully and feloniously become the custodian and depository for hire and privilege of divers sums of money from divers persons which sums of money were then and there deposited with defendants as bets and wagers between divers persons upon the said horse race.

The defendants were duly arrested and arraigned on the 26th day of May, 1906, and entered their plea of not guilty. Judge Wofford, the regular judge of

the court, disqualified himself and called Hon. B. J.
Casteel, judge of the criminal court of Buchanan
county. Thereafter on the 8th day of June, 1906, Judge
Casteel appeared and proceeded in the case. A jury
was empanelled, and duly sworn, and at the close of
the evidence, the defendant Gardner, under the instruc-
tion .of the court, was discharged, but the defendant
Oldham was convicted on the fourth count in the indict-
ment, and his punishment assessed at a fine of five hun-
dred dollars. Thereupon the defendant in due time
filed his motion for new trial and in arrest of judgment,
both of which were overruled and the defendant was
sentenced in accordance with the verdict of the jury.
An appeal was granted the defendant to this court, and
the bill of exceptions was duly allowed and filed.

The evidence on the part of the State tended to
prove horse races were run at the Elm Ridge Race
Track on the 19th of May, 1906. This race track was
owned by the Kansas City Jockey Club and Fair As-
sociation, a corporation duly incorporated under the
laws of this State, and was situated near Sixty-third
and Lydia streets of Kansas City in Jackson county,
Missouri. Prior to the passage of the act of March 21,
1905, repealing what is known as the ''Breeder's Bill,''
approved April 7, 1897 (Laws 1897, p. 100, secs. 7419
to 7424, R. S. 1899), the Fair Association had been con-
ducting racing meetings regularly according to the pro-
visions of sections 7419 et seq., Revised Statutes 1899.
After the passage of the act of 1905, it appears that the
Jockey Club advertised a race meeting on its grounds
at Elm Ridge Race Track in Jackson county, Missouri,
and races were run thereon on the 19th of May, 1906.
Admission tickets were sold by the Fair Association at
the gate, said tickets were coupon tickets. Upon en-
tering the track the gate-keeper would tear off the
coupon and hand back the stub, which had on it the
same number as the coupon. Each ticket had a differ-

ent number so that no two persons upon the track would have the same number. Attached to the stub was a cord or string to be attached or fastened to the button hole of the coat. The race track was equipped with the ordinary appurtenances, such as judges' stand and grand stand. What was known as "the betting ring" was a place under the grand stand, open at the ends, with a granitoid floor, and the floor of the grand stand formed the roof of the betting ring. In this betting ring were several booths, or small stands built up above the floor, and large enough to be occupied by four or five men and have a platform on the outside. The evidence shows that the defendant Oldham was standing on the platform attached to one of these booths in this so-called betting ring. He had a kind of attachment that came over the head with a receiver of a telephone over his ear; then there was another apparatus made which hung on his breast with a transmitter in front of him. If a person walked up and handed him any thing to bet, he talked through this instrument in front of him. This telephone instrument was so attached to him that he could speak at all times through the transmitter. On the top of this booth, where Oldham was seen, there was what the bookmakers call a slate or blackboard, about two feet by three and one-half in size. This slate had attached to it a card with the names of the horses, the weights they carry and the names of the jockeys. In front and to the left of the names of these horses on this slate, there were figures, and also figures to the right of the names; these figures indicated the "price" or odds which the bookmaker lays against each horse in the race. If the figure 2 was in front of the horse's name on this slate, it would indicate that the bookmaker would bet two dollars to one that the horse did not win. On the right side of the name were other figures indicating what the

bookmaker would bet that the horse did not run second or third.

The evidence of Halpin, chief of detectives of the Kansas City police force, was that he saw Cronin make a bet on a horse named Olivette with the defendant Oldham, and Cronin exhibited his admission ticket showing his admission number, handed Oldham fifteen dollars, and said, "Olivette," and Oldham threw the money into the cash box and said through his instrument "30 to 15 Olivette," at the same time calling into the telephone the number of Cronin's admission ticket. When money was put in to be placed on a horse, Oldham took the money, but when it was to be paid out on a winning ticket, another man at the other end of this booth paid it out. This man who paid off the bets had the same sort of apparatus that Oldham had around his head. These telephones did not connect with any central office, but were direct wires leading into Kansas City, Kansas, and into rooms 317 and 318, Portsmouth building, Kansas City, Kansas. Upon cross-examination Chief Halpin testified that the system just outlined was entirely different from the system which prevailed on this track prior to the act of 1905. Under the old system there was in each booth a sheet writer; but on the day in question there was no writing done by anyone in the booth. Under the old system, if a man wanted to make a bet, he handed the money to the man on the "block," or outside stand of the booth, and this man would call off to the card writer and the sheet writer inside the booth the name of the horse and the odds to be given. The card writer would write out the name of the horse and the odds given on numbered cards, and the card or ticket would be given to the man who made the bet. While the card writer was writing the card, the sheet writer would write on his sheet of paper the number of the card and also the aggregate sum which the bookmaker bet against the sum which the player handed to the bookmaker, and in this way

the sheet writer would have a record of the number of the ticket, name of the horse and the amount of the wager. After the race, this sheet was delivered to the cashier of the booth and when a winning ticket was presented the cashier would refer to the sheet and if correct the bet would be paid. As already said, this was the old system prior to the act of 1905, but there was nothing of this kind on the day in question, on the Elm Ridge Race Track. The State rested upon the testimony of this witness.

Thereupon the defendant called J. S. Gardner, who testified he was president of the Kansas City Jockey Club and Fair Association, a corporation engaged in conducting a race track, and had been so conducting it before the passage of the law of 1905. Prior to the passage of the act of 1905 the Jockey Club did not itself conduct book-making, but as the State licensed it, the club permitted it. Oldham is a stockholder in the company and one of the first stockholders in the club. Gardner testified further that in behalf of the Jockey Club, he provided for the telephone wire or line running from the Elm Ridge Race Track in Missouri across the State line into rooms 317 and 318, Portsmouth building, Kansas City, Kansas. He testified that he instructed Mr. Oldham that there was to be no book-making as it had been carried on under the Breeder's law, and there should be no registration of bets on the Jockey Club ground. The club had Pinkerton's detectives patrol the grounds to see that there was no registration of bets made, and these were the orders given to Mr. Holmes, the superintendent of the grounds. There was no book-making or registration of bets or recording of bets upon the grounds of the Jockey Club. Betting was allowed there. There is no such thing as book-making without a system of registration, because a man cannot remember all the bets he may make. The rooms in Kansas City, Kansas, into which this private

telephone wire ran from the Kansas City Jockey Club in Missouri, were rented by the Kansas City club. A record of the bets made in Missouri on this race course was kept in these rooms in the Portsmouth building in Kansas City, Kansas. Indeed, counsel for the defendant admitted in open court that the bets were registered in Kansas and that a regular book-maker had charge of the matter on the day in question and recorded and registered the bets; that the defendant Oldham had an agreement with Everhart, who was located in the Portsmouth building in Kansas City, Kansas, that he, Oldham, would be at the other end of the telephone, to-wit, the betting ring on the Elm Ridge Race Track in Missouri, and he would there receive any proposition that Everhart had to make from the telephone, and any acceptance of propositions that he made for bets. The evidence shows that the defendant Oldham, at the Elm Ridge Race Track in Missouri, telephoned all offers to bet to Everhart, the book-maker, in Kansas, for his acceptance or rejection. The race track company had nothing to do with the book-making or betting except that it permitted the betting to go on upon its tracks. The evidence further showed that after any given race was run, the winner would present his numbered ticket to the defendant Oldham, in the betting ring in Jackson county, and demand the money he had won; that thereupon the defendant Oldham would telephone to the book-maker, the party who registered and kept the record of the bets in the State of Kansas, and ascertain from such book-maker and register what amount, if any, was coming to the party so presenting the numbered ticket, and thereupon the book-maker and register in Kansas would advise defendant Oldham by telephone, what amount was coming to the party, and upon that information Oldham would pay the bet in Missouri. The foregoing is a summary of the material evidence in the case.

At the close of the testimony, the defendant moved

the court to instruct the jury that the evidence failed to show the commission of any criminal act against the laws of Missouri. And second, "That it appears from the undisputed evidence in the case, that the use of the telephone from the race track in Kansas City, Missouri, to the Portsmouth building in city of Kansas City, in the State of Kansas, and the performance of various acts and things in the State of Kansas by parties stationed there, in that State, constituted an essential part of the transaction of making and registering bets, and that no complete offense was committed in the State of Missouri, that under such circumstances to construe the statute of Missouri as applicable to the facts in this case, and creating an offense and the exercise of jurisdiction by this court and punishing the defendant therefor, would be to give such statute an extraterritorial effect, and would be to deny defendant liberty and property without due process of law, guaranteed to them by the 14th amendment of the Constitution of the United States, and they invoke the protection of said amendment." Which instruction the court denied and the defendant excepted, thereupon the court gave the following two instructions, numbered 5 and 6:

"5. If the jury believe from the evidence that the defendant by himself, or in connection with others, on or about the 19th day of May, 1906, occupied and had charge of a room, shed, booth or building, located on the premises of the Elm Ridge Race Track, near the intersection of the streets, commonly called Sixty-third and Lydia streets, of Kansas City, Jackson county, Missouri, and did then and there at the said county of Jackson and State of Missouri, unlawfully, knowingly and feloniously permit said room, shed, booth or building to be used and occupied with an instrument and device, to-wit, with a blackboard, and telephone instrument and numbered tickets of admission, which said blackboard and numbered tickets of admis-

sion were then and there for the purpose of recording bets and wagers upon the result of a trial and contest of skill, speed and power of endurance of beasts, to-wit, certain horses, named Baby Branch, T. Jo, Pauline Cobb, Pat Kennedy and Castle Gregory; which said contest was to take place thereafter at said Elm Ridge race track on the afternoon of said 19th day of May, 1906, you will find the defendant guilty as charged in the 4th count of the indictment and assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than five years, or by imprisonment in the county jail for a term of not less than six months nor more than one year, or by a fine of not less than five hundred dollars, or by both such fine and imprisonment. Feloniously as used in the foregoing instruction means wrongfully and against the admonition of the law.

"6. If the jury believe from the evidence that the defendant, by himself or in connection with others, kept and maintained the blackboard, telephone instrument, and numbered tickets of admission in the manner at the time and place mentioned in the evidence, for the purpose of procuring bets and wagers upon the result of a trial and contest of skill, speed and power of endurance of horses, and transmitted the information of the procuring of such bets and wagers to a person in Kansas City, Kansas, under an agreement or understanding theretofore entered into by and between the defendant and such other person, that such other person should record and register such bets in the State of Kansas, that would be keeping and using such instruments and devices, to-wit, a blackboard, telephone instrument and numbered tickets of admission, for the purpose of recording such bets and wagers, and the jury should find the defendant guilty as charged."

To the giving of which the defendant at the time duly excepted, and, as already said, the jury under the

instructions of the court found the defendant Oldham guilty on the fourth count of the indictment, and assessed his punishment at five hundred dollars.

I. The act of March 21, 1905, upon which the indictment in this case is bottomed, consists of one section and provides: "That any person who keeps any room, shed, tenement, tent, booth or building, or any part thereof, within this State, and who occupies the same with any book, instrument or device, for the purpose of recording or registering bets or wagers or selling pools upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, which is to be made or to take place within or without this State; or any person who records or registers a bet or wager or sells pools upon the result of any trial, or contest of skill, speed or power of endurance of man or beast, which is to be made or to take place within or without this State; or, being the owner, lessee, occupant or person in charge of any room, shed, tenement, tent, booth or building, or any part thereof, within this State, knowingly permits the same to be used or occupied for any of the purposes herein set forth; or therein keeps, exhibits, uses or employs any device or apparatus for the purpose of recording such bets or wagers, or selling of pools, as hereinabove set forth, or becomes the custodian or depository for hire or privilege of any money for any purpose contrary to the provisions of this section, shall, on conviction, be adjudged guilty of a felony, and shall be punished by imprisonment in the penitentiary for a term of not less than two nor more than five years, or by imprisonment in the county jail for a term of not less than six months nor more than one year, or by a fine of not less than five hundred dollars, or by both such fine and imprisonment."

By reference to the act it will be seen that it is subdivided into five different clauses. For the purposes of this case and on the record before us, we are

only to consider whether the defendant Oldham was properly convicted of violating the third subdivision of said act, to-wit, whether he as owner, lessee, occupant or person in charge of a booth, room, tenement, shed or building within this State, knowingly permitted the same to be used or occupied for any of the purposes set forth in the said act, and charged in the fourth count of the indictment; that is to say, ''with a book, blackboard, telephone instrument, telegraph instrument, numbered tickets of admission, pencils, pens, ink and other devices, which said books and instruments, etc., were then and there in the said building for the purpose of recording and registering bets and wagers and selling pools upon the result of a contest of speed between certain horses, which was to be made and take place on the afternoon of the 19th of May, 1906.'' This act, it will be observed, is not leveled at betting or placing of wagers upon horse racing. The evil which the Legislature undertook to prohibit, by making it a felony, was the keeping of a room, shed, tent, booth or building wherein one kept books, instruments and devices for the purpose of recording or registering bets or wagers or the selling of pools, and thereby to tempt and seduce the public into the vicious practice of gambling. The Legislature obviously considered that when a house, room, booth or building is specially set apart and devoted to the purposes of gambling, the evils resulting therefrom are greatly multiplied, and hence it is made a felony by the third subdivision of this section for the owner, lessee, occupant or person in charge of any such building to knowingly permit the same to be used or occupied for any of the purposes set forth in the act. That the betting room described in the evidence and occupied by the defendant Oldham, brings it within the designation of building or room as used in the statute, we think there can be no doubt, nor can there be any doubt that the booth occupied by the

defendant in the betting ring, was such a place as was in the contemplation of the Legislature. The indictment does not charge the defendant with a violation of the second subdivision of the act, to-wit, the registering or recording of any bets upon the said horse race, but evidently sought to make a charge of a violation of the third subdivision. The contention of the counsel for the defendant is that this act of 1905 prohibits only the registering and recording of bets in this State, and it is clear that the defendant, acting upon this construction of the act, and with a view to avoid its force and effect, adopted the scheme of receiving the bet at the booth in the betting room of the Elm Ridge Race Track, and telephoning it to Everhart in the pool room 317 and 318 Portsmouth Building in Kansas City, Kansas, and having it there recorded, and that such scheme was a subterfuge to avoid the operation of the law. We think the third subdivision of the act under which this indictment was drawn would authorize a conviction if the defendant knowingly permitted the booth under his charge to be used or occupied by another person with a book, instrument or device for the purpose of recording or registering bets. By reference to the third subdivision, it will be noted that the owner, lessee or occupant in charge of the building or booth is held criminally responsible if he "knowingly permits the same to be used or occupied for any of the purposes herein set forth." In order, therefore, to make a charge under this third subdivision, recourse must be had to the other subdivisions of the section, and when this is done, it is apparent that the first subdivision must be invoked to supplement a valid charge under this third subdivision. The first subdivision has reference to a person who occupies any room, shed, etc., within this State, and who himself occupies the same with a book, instrument or device for the purpose of recording or registering bets

or selling pools, etc. Whereas this third subdivision makes him equally guilty if he knowingly permits his said room, booth, etc., to be used or occupied, as we construe it, by some person other than himself with a book, instrument or device for the purpose of recording or registering bets or wagers or selling pools. The language employed, to-wit, "to be used or occupied," implies that the building or booth is to be used or occupied by some person and not used or occupied by a book, instrument or device, which could have no purpose of recording or registering a bet. If we are right in our construction of this third subdivision of the section, then to make a good charge, the pleader should have charged who the person was whom the owner or the defendant permitted to use and occupy the booth, but if his or their names were unknown to the grand jury, to have so charged the fact, and that such person or persons used or occupied such building or booth with a book, instrument or device for the purpose of recording or registering bets.

This construction of the subdivision is re-enforced, we think, by the fourth subdivision, which provides that if any person being the owner, lessee or occupant of any room, tenement, etc., "therein keeps, exhibits, uses or employs any device or appurtenance for the purpose of recording bets and wagers," etc. By this subdivision, it is made a felony to keep books, instruments and devices for the purpose of recording bets and wagers, but we think it is clear that the fourth count of the indictment in this case does not charge a violation of the act under this fourth subdivision, but proceeds upon the idea that the owner permitted it to be occupied. Were this other than a criminal proceeding for a felony, it might be inferred after verdict that the word "person" or "other person" or "some other person" might be implied and thus comply with the statute, but the invariable rule of construction of criminal pleadings,

especially in felonies, is that nothing is to be taken by implication.  This rule has come down to us with the sanction of the greatest judges of England, and of our own Federal Supreme Court and of the highest courts of all of our states.  [2 Hawk. P. C., 25, sec. 60; State v. Evans, 126 Mo. 406; State v. Furgerson, 152 Mo. 92.]

II.  But counsel for defendant and the State both present a proposition of law beyond and outside of this technical matter of pleading, which after all is the real question involved in this case.  On the part of the defendant, it is urged that this act only prohibits the registering and recording of bets in Missouri, and the keeping of a room, booth or building furnished with the paraphernalia for recording and registering bets in this State, and with that view, it is clear that the defendant resorted to the device of receiving the offer of bets in Missouri and telephoning them to his associate in Kansas City, Kansas, and having them recorded there instead of at the race track where the bets were made.  Whereas the State's contention is that the law is broad enough to punish the appellant for the acts committed in Missouri no matter where the bets were recorded.  Unquestionably the laws of a State are for the government only of persons and things within it, and statutes in mere general terms will be construed as not intended to create offenses or regulate the conduct of persons beyond its territorial limits, and where legislation in one country will properly bind its citizens in another, express words are required, or distinct implication to give it this effect.  [Bishop, Statutory Crimes, sec. 141, and cases cited; Cooley's Const. Lim. (6 Ed.), 149; State v. Gritzner, 134 Mo. 526.]

As already said, the evil which the Legislature intended to stamp out by this act was not horse racing or even betting on horse races, but it was to prohibit

the keeping of a room, booth, building or part thereof, in which these gambling devices and books and instruments were kept for the purpose of inducing and enticing and permitting persons to bet thereon or play thereat, and to present the opportunity to the incautious and over-credulous to become the dupes and victims of sharpers and gamblers, and clearly the act is broad enough to punish those not only who register and record bets within this State, as provided by the second subdivision of this act, but also those who being the owners, lessees or occupants of any room, booth or building or part thereof within this State, occupy the same with any book, instrument or device for the purpose of recording or registering bets or wagers and' selling pools upon the result of any trial or contest of skill, speed or power of endurance, whether such contest is to be made, or take place within or without this State, and is clearly leveled at offenses committed in this State, and at those practices which corrupt the morals and demoralize its own citizens. The offense is complete under the first and third subdivision when the building or booth is occupied by some person or persons with a device, book or instrument for the recording and registering of bets, whether such bets are actually made and registered or recorded in this State or in some other sister State. It is aimed at the persons who keep and maintain the gambling house with its books and devices and paraphernalia for gambling in this State. [State v. Rosenblatt, 185 Mo. 114; State v. Stewart, 194 Mo. 345.]

In our opinion the contention of the defendant on this point is not tenable.

III. Inasmuch as both the first and third subdivisions of the act require not only that the room, shed, booth or building or some part thereof, shall be occupied either by the owner thereof, or by some person with his knowledge and consent, with a book, in-

strument or device for the purpose of recording or registering bets or selling pools, the question is sharply presented on this record whether the telephone, blackboard and numbered tickets constitute either such a book, instrument or device as was contemplated by the General Assembly when it enacted this statute. That the blackboard itself with the names of the horses, the weights they would carry and the names of the jockeys and the odds which the book-maker offered against each horse, was not a book, in the common and ordinary acceptation of that word, we think is perfectly clear. While "the book" in the vernacular of the race track need not be a bound volume with printed matter therein, we gather from the testimony that to make "a book" as that term is understood by the gambling fraternity, there must be a sheet of paper on which is recorded the name of the horse, the odds to be given and either the name of the better, or a numbered card, by which the holder of the card could be designated and the better furnished with a card or ticket, and the amount which the bookmaker bet against the same, which the player handed to the book-maker, and when the race was won this sheet would indicate, to the cashier or book-maker, the amount won by the player. According to the testimony of Mr. Halpin, the chief of detectives, no such book as this was kept by the defendant Oldham or his employees in his booth on this race track on the 19th of May, 1906. The blackboard used was in no sense such a book. Was the telephone used by the defendant, as already indicated in the statement, such an instrument as to bring it within the purview of the statute? Recurring again to the language of the act, it must be observed that the instrument which the occupant of the booth used, was "for the purpose of recording or registering bets or wagers or selling pools." Testimony shows that the only purpose which the tele-

phone subserved was to report to the book-maker and
register in Kansas the offer which the player would
make, and to report back the book-maker's acceptance
in Kansas of the amount he was willing to bet upon the
race.    There was no evidence showing or tending to
show that the telephone was an instrument used for
the purpose of recording bets or wagers or was adapted
to such a purpose, and unless it was such an instrument
then there was no proof that any such instrument was
used by the defendant.    The Attorney-General in his
printed brief expresses the same view of the statute that
we have just indicated.    He says: "Under the sub-
division under which the fourth count was drawn, the
crime consists, not in the actual recording of the bets,
but the occupation of the booth with an instrument or
device designed for the purpose of recording bets."
Without doing violence to the ordinary meaning of the
words, a telephone wire with a transmitter and receiver
cannot be said to be an instrument or device for the
purpose of recording or registering bets.    It may be
said that the construction of the telephone line and the
pre-arrangement for having the bets registered and re-
corded in Kansas City, Kansas, was a perfectly ob-
vious trick and subterfuge to evade the law, and we
agree with the counsel for the State that such was the
obvious purpose, and that the disguise was too thin,
but after all the question is not whether the defendant
has successfully evaded the statute, but whether he
has violated it.

In this connection the case of Davis v. Stephenson,
24 L. R. Q. B. Div. 529, is very instructive.    That was
a criminal appeal before Lord Chief Justice COLERIDGE
and Lord ESHER, Master of the Rolls.    The offense
charged was a violation of The Betting Houses Act,
16 and 17 Vic. chap. 119, and an act known as The
License Act of 1872, 35 and 36 Vic. chap. 94.    The
charge was that the defendant had unlawfully suffered

his licensed house to be used in contravention of the
Betting Houses Act, contrary to the Licensing Act of
1872. The person said to have been allowed to use the
house was one Hicks and the defendant's daughter. It
appears, that on the day alleged, Hicks received, partly
in a passage near the house and partly on waste ground
near it, a large number of packets containing money as
stakes. The persons from whom he received the pack-
ets intended to back horses at Ascot races. Each packet
contained, besides the money, a memorandum of the
backer's name, the horse's name, the sum laid, and the
time at which the race was to be run, the understand-
ing being that if the horse named won, Hicks was to pay
the backer the sum enclosed with the current odds
against the horse at starting. For so doing Hicks was
convicted of using the places in question for betting
with persons resorting thereto in contravention of the
16 and 17 Vic. The packets conveyed to Hicks were
proved to have been conveyed into the house by the
defendant's daughter. On the execution of the search
warrant, Hicks was found at the bar among the cus-
tomers; the defendant was found behind the bar with a
glass containing money and a paying-out list relating
to bets made on other days before him; and some of
the papers received by Hicks on the day in question
were found in a drawer in the bar. It was not proved
that any of the depositors of stakes resorted to the
tavern. Now, it was conceded by counsel for the Gov-
ernment that it was necessary to prove a receipt by
Hicks of stakes within the tavern. The evidence
showed, however, that Hicks received the money out-
side of the tavern, and after its receipt sent it to the
tavern by a messenger by arrangement with the de-
fendant. Upon this state of facts, Chief Justice COLE-
RIDGE said: "I am of opinion that the conviction can-
not be sustained. I come to this conclusion with some
reluctance, because it amounts to deciding that a de-

State v. Oldham.

liberate and scarcely disguised attempt to evade the act has succeeded; but I.do not think the court can hold otherwise without holding that the act applies to cases which cannot be evasions of it as they are obviously not within its purview. . . . The statute, therefore, does not reach the case, and the conviction must be quashed." The Master of the Rolls concurred, saying: "I am of the same opinion. Attempts to evade penal statutes are common, and this attempt has succeeded."

And so we say in this case; the whole conduct of the defendant indicates a deliberate attempt to evade the statute, and owing to the form of the statute and the peculiar language used, we think he has succeeded. Had the act read like the act enacted by the Legislature of New Jersey in 1898, Public Laws New Jersey 1898, page 812, which provides in section 65 of said act: "Any person or corporation that shall habitually or otherwise buy or sell what is commonly known as a pool, or any interest or share in any such pool, or shall make or take what is commonly known as a book, upon the running, pacing or trotting, either within or without this State, of any horse, mare or gelding, or shall conduct the practices commonly known as book-making and pool-selling, or either of them, or shall keep a place to which persons may resort for engaging in such practices, or either of them, or for betting upon the event of any horse race, or other race or contest, either within or without this State, or for gambling in any form, or aiding, abetting or assisting therein, shall be guilty," etc., a conviction might have been had upon the facts developed in this case; but the act before us is restricted to the sole offense of keeping a room, shed, booth or building, and occupying the same with a book, instrument or device for the purpose of recording or registering bets or wagers or selling pools, or being the owner of such a place knowingly permitting

it to be used for such a purpose, and it is not within the judicial power to extend the act beyond the words of the statute and their plain import. In our opinion the fourth count in the indictment under which the defendant was convicted was insufficient for the reason already assigned and the evidence fails to establish that the defendant occupied the booth in question with a book, instrument or device designed or adapted to the recording or registering of bets and wagers upon any trial or contest of skill, speed or power of endurance of man or beast, within the meaning of the statute, and accordingly the judgment must be reversed and the defendant discharged.

*Burgess, P. J.,* and *Fox, J.,* concur.