**STATE of Missouri, Respondent,**

v.

**George DEPPE, Appellant.**

No. 45032.

Supreme Court of Missouri.

Division No. 1.

Feb. 13, 1956.

Rader, Love & Falzone, Clayton, for appellant.

John M. Dalton, Atty. Gen., J. Richard Roberts, Sp. Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant and two others were jointly charged by indictment of seven counts averring violations of Section 563.360 RSMo 1949, V.A.M.S. A severance was granted and defendant was tried separately. At the conclusion of the evidence, the trial court sustained a motion for a judgment of acquittal as to Counts II to VII, inclusive. The jury found defendant guilty as charged in Count I and assessed his punishment at imprisonment in the county jail for one year and a fine of $1,000. Defendant has appealed from the ensuing judgment.

Count I of the indictment averred that defendant and two others "on the 30th day of September, A.D., nineteen hundred and fifty-four at said County of St. Louis, and State of Missouri, did then and there unlawfully, knowingly, wilfully and feloniously occupy a building, or a part thereof, known as 3139 Luda Avenue, City of Ma-

plewood, in the County of St. Louis and State of Missouri, with certain Turf programs, scratch sheets, tabs containing notations of bets, listing races, tracks, names of horses, amounts bet and name or initial of bettor, instruments and devices, to-wit:

"For the purpose of recording or registering bets and wagers upon the results of trials or contests of skill, speed, or power of endurance of beasts, which were to be made or were to take place without the State of Missouri, contrary to the form of the Statutes in such case made and provided, and against the peace and dignity of the State."

It is not contended by defendant-appellant that Count I of the indictment is not sufficient, charging as it does the crime of bookmaking substantially in the language of the first subdivision of the statute, 563.-360, supra. See State v. Saussele, Mo. Sup., 265 S.W.2d 290. However, defendant-appellant contends the evidence, hereinafter stated in part, was insufficient to sustain a conviction under Count I. It is asserted the evidence was insufficient in tending to show an "occupancy" by defendant in the sense of an occupancy contemplated by the word "occupies" as used in the statute. Defendant also contends counsel for the State in his opening statement failed to state such facts which the State expected to prove as would adequately apprise defendant of the facts and of the course of the trial contemplated, or as would justify a court in submitting the issue of defendant's guilt to a jury. Defendant further contends it was improper for State's counsel in his opening statement to allude to the facts, and it was prejudicially erroneous for the trial court in instructing the jury to advise the jury of the facts that defendant had been jointly charged with others; that a severance had been granted; and that defendant "alone is now on trial." And defendant further contends that the trial court erroneously permitted a witness for the State to testify that he had learned that "Bud," theretofore referred to in his testimony of the witness, was one and the same person as defendant.

The State introduced evidence tending to show that on September 29, 1954, a house situate on Luda Avenue in Maplewood was under the surveillance of Captain Moeller, a deputy sheriff of St. Louis County assigned to gambling, liquor, vice and narcotic cases. On September 30th at approximately 2:45 in the afternoon, the Captain and three other deputies, Mourton, Hanneken and Chamblin, raided the place on Luda. Having entered, the Captain proceeded to the northwest room on the second floor where he observed two men—one, a Mr. Anderson, was lying on a bed apparently ill, and the other, defendant, was sitting in a chair clothed only in his underwear. There was a small table with a telephone instrument on it. On this table there were a television set (the set was "off"), betting tabs, a box containing pencils, erasers, and blank forms; and there were sheets of paper on which were written the names of horses, prices marked, amounts bet, and the bettors on the first few races of September 30th. Scratch sheets were also found in the room. A list of names and telephone numbers was found on the top of a cabinet. The Captain, testifying as an expert, explained how these various devices were used in "bookmaking" on racing events.

When the officers entered, "screw caps on each end" of the telephone had been removed, and the "yellow wire" connecting the telephone to a box on the wall had been disconnected. When one lifted the receiver of the telephone nothing could be heard. Defendant was sitting on one of the detached telephone "caps," on a scratch sheet or National Turf Program and on an Illinois Turf Concensus for September 30th. The officers also found one Primo Caudera hidden in the closet of another room. The other telephone "cap" was found in the room "that Caudera was in." The Captain reassembled the telephone instrument and reconnected the wiring. The telephone began to ring "constantly." The Captain spoke with those who called in over the telephone. These persons asked for and gave information. The Captain testified,

"Mr. Eskeles (counsel for the State): Q. Captain, you were there answering the phone. People would call up on the phone. Who would they ask for? A. They asked for Bud and for Larry.

"Mr. Love (counsel for defendant): I'm going to object to that answer and move it be stricken for the reason that is not the name of this defendant and anything further that was said does not in any way connect this defendant to that conversation and I move that the Court instruct the jury to disregard it.

"The Court: I will overrule the objection.

"Mr. Eskeles: Q. Did you learn who Bud was? A. Yes, sir.

"Q. Who did you learn Bud was?

"Mr. Love: I object for the reason it calls for a conclusion on the part of the witness and calls for hearsay evidence, unless it is first determined how he learned.

"The Court: That can be brought out on cross examination. I will overrule the objection.

"A. George Deppe.

"Mr. Eskeles: Q. The defendant seated here was known as Bud? A. Yes, sir."

█ We think the Legislature in the first subdivision of Section 563.360, supra, by the use of the language, "Any person who occupies any room, * * * building or enclosure, * * *" was not intending the word "occupies" should be understood as an "occupancy" such as would constitute a mode of acquiring a right of ownership in property as defendant-appellant urges. The Legislature speaks of any person who "occupies any room, * * * building or enclosure, * * * with any book, sheet, blackboard, instrument or device or substance for the purpose of recording or registering bets or wagers * * *." The

offense under the first subdivision of the statute is considered complete when the person charged occupies a room, building, etc., with any book, sheet, etc., for the purpose of registering bets or wagers. State v. Oldham, 200 Mo. 538, 98 S.W. 497. In our case there was substantial evidence tending to show the defendant was physically present, and in this sense he was an occupant of the northwest room on the second floor of the building on Luda. Now his conduct demonstrated that his physical presence was definitely in connection with scratch sheets or turf programs and with a part of the dismantled telephone upon which he sat and attempted to conceal. He had taken off his outer clothing and had settled down comfortably garbed only in his underwear in handy proximity to other scratch sheets, instruments and paraphernalia used in bookmaking, including a telephone. We have no doubt that this evidence was substantial in circumstantially satisfying the statutory element that he was "occupying" the room, that is, a part of the building with bookmaking devices for the purpose as charged.

It is provided by Section 546.070 RSMo 1949, V.A.M.S., that, a jury having been impaneled and sworn in a criminal case, "the trial may proceed in the following order:

"(1) The prosecuting attorney must state the case and offer the evidence in support of the prosecution; * * *."

█ It has been said in State v. Loeb, Mo.Sup., 190 S.W. 299, 303, that the mandatory nature of this provision is not only evident from its form, but from its purpose. The opening statement has the office of advising the jury of the facts which the State expects to prove. The opening statement has the further purpose of informing a defendant of the contemplated course of the prosecution and of the facts relied upon by the prosecution, so as fairly to enable a defendant to meet the charge preferred against him. It has been said " 'a fair field and no favor' " was the purpose of the whole statute. In the Loeb case this court did not make a decisive

ruling on the asserted insufficiency of the State's opening statement to the jury. See also State v. Jones, 363 Mo. 998, 255 S.W. 2d 801, wherein the question of the sufficiency of the opening statement was resolved in favor of the State, and was not the decisive one upon reversal and remand. Yet we have no doubt that State's counsel has the duty to state to the jury the evidence upon which the State relies for a conviction, so that a defendant may be apprised of the facts and the manner in which the facts are to be shown, and may consequently be enabled to marshal whatever evidence he can in his own defense. State v. Loeb, supra. In our case, as we shall see, the prosecuting attorney's statement is not a model. Particularly, State's counsel stated that " * * * the defendant George Deppe was arrested in this house at 3139 Luda by some deputy sheriffs of St. Louis County, who will testify to the surrounding circumstances leading to their going into the place, the search warrant, that they had at the time, what evidence they found there in the way of devices, paraphernalia generally used in the operation of a handbook. They will testify as to certain scratch sheets, betting tabs, notations, race results that they found there, a telephone found there, where these things were found, where defendant was found, when he was found, the time, how he was dressed; they will testify as to everything that went on from the time they started this raid that led to this arrest and this indictment until the time they left the place with these defendants, with the defendant Deppe, charged him and presented this matter to the grand jury. The state feels and asks you, Ladies and Gentlemen, that if, at the conclusion of the case and the evidence presented, the state will ask that you bring back a verdict of guilty in accordance with the instructions as given by his Honor."

■ Now from this brief statement it is to be readily understood that State's counsel was telling the jury that deputy sheriffs of St. Louis County would testify they had proceeded to the house on Luda Avenue; that they found therein certain devices, scratch sheets, betting tabs, nota-

tions, race results, and other paraphernalia generally used in operating a handbook; that they found a telephone in the place; and that the defendant was there at the time and at the place where these things were found. The witnesses would also testify of the way defendant was dressed. In concluding, State's counsel seems to have intended to state that from the testimony of these facts the State would expect a conviction, although counsel did not close out the statement by completing the sentence. While the opening statement was meager, it, and the reasonable inferences deducible from it, no doubt, sufficiently apprised defendant of the facts and circumstances upon which the charge was based and of the way the facts and circumstances were to be shown, and these facts, circumstances and inferences reasonably deducible therefrom were sufficient to circumstantially implicate defendant as one guilty of the offense charged. We cannot see, and defendant does not particularly undertake to point out, in what way he was handicapped or prejudiced by the brevity of the opening statement in preparing and interposing his defense.

■ During the introductory part of the opening statement, the State's counsel had alluded to the fact that defendant had been charged jointly with two others, and upon objection the trial judge said, "I think you should refer to that as though it was just to charge the one man from now on, don't you think so—both sides—because there is a severance. The jury understand they are to be tried separately." In Instruction No. 1 the trial court advised the jury that the "State of Missouri, by the Indictment filed in this case, * * * charges the defendants, Primo Caudera, Howard Rowlands and George Deppe, with the offense of Operating a Handbook. A severance has been granted and the defendant George Deppe alone is now on trial. He pleads not guilty. * * *"

In a case where several have been jointly charged, although it would seem to be unnecessary, it is not necessarily prejudicial to a defendant who has been granted a

severance to allude or instruct as to the fact, upon his separate trial, that he had formerly been jointly charged with others. In the case of State v. Castino, Mo.Sup., 264 S.W.2d 372, cited by defendant, the trial judge's remarks to a panel of veniremen indicated that he thought three defendants who had been jointly charged, including defendant, were all guilty as charged. The trial judge's statement was improper and prejudicial, not really because he had alluded to the fact that defendant had been jointly charged with others, but particularly because his remarks reasonably could have been understood as an indication that he thought defendant guilty. We believe it could not be soundly said the prosecuting attorney's mere reference to the joint charge (or the trial court's Instruction No. 1, advising of the joint indictment, of the severance and of defendant's separate trial), could have prejudiced the defendant in the trial of this case.

 We have detailed the testimony of Captain Moeller that defendant George Deppe was known as "Bud." Defendant herein argues that it is obvious the witness, Captain Moeller, was testifying either to hearsay or to a conclusion based upon hearsay or other facts outside of the evidence. Defendant-appellant says, "We are not told upon what evidence the witness believed that 'Bud' was one and the same person as defendant. It is the province of the jury to determine whether or not defendant Deppe was one and the same person as 'Bud,' and the evidence upon which that ultimate finding of fact was found by the witness should have been presented to the jury for their determination. * * * Not only is the above analysis true but the witness is permitted to testify to the conclusion that the particular 'Bud' requested over the telephone was George Deppe." The last (quoted) sentence of defendant's argument presents the most serious question raised in the case. There is indeed the possibility, although but a tenuous one, that the jury could have understood the witness was saying that he had learned, from sources undisclosed, that persons who called in asking for Bud were asking for defendant. It seems to us, however, that this is not the import of the whole series of questions and answers which we have quoted supra. A summary of the whole purport and intendment of the quoted examination of Captain Moeller on the subject seems to us to be exemplified and explained by the last quoted question and answer—"Q. The defendant seated here was known as Bud? A. Yes, sir." An answer that one is known by a particular name is not objectionable on the ground of hearsay, nor is it a conclusion. The witness's answer is based on his knowledge, although a knowledge acquired through hearsay. A person's *name* is the title by which habitually he calls himself and others call him, and though the source of information as to one's name may be hearsay, yet it is universally relied upon as a source of knowledge. Vol. II, Wigmore on Evidence, 3d Ed., § 667a, p. 788; State ex rel. Kansas City Public Service Co. v. Cowan, 356 Mo. 674, 203 S.W.2d 407; Lightfoot v. State, 123 Tex.Cr. 176, 58 S.W.2d 81.

The judgment should be affirmed.

It is so ordered.

COIL, C., dissents.

HOLMAN, C., concurs.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.