THE STATE ex rel. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. FRANCIS H. TRIMBLE, Judge, and CORA SELLS.

**In Banc, February 10, 1914.**

1. **MOOT CASE: Refusal to Produce Documentary Evidence: Subsequent Trial.** A prohibition proceeding to prohibit the trial court from enforcing an order directing the railroad defendant in a damage suit to produce and exhibit to plaintiff certain train-sheets and records showing the movement of the train which killed plaintiff's husband and the condition of its headlight will not be held to be a moot case, simply because, since the preliminary rule in prohibition issued, the original cause has been tried, without the production of the documentary evidence, and an appeal has been taken and is now pending in this court, but, under the circumstances, the validity of the order to produce is adjudicated.

2. **PRODUCTION OF DOCUMENTARY EVIDENCE: Relevancy and Materiality Must Be Shown.** The trial court has authority to compel a defendant to produce only such papers and docu-

ments in his possession, to be inspected and used in the trial of the cause, as are material and relevant to the merits of the cause; and the burden rests upon the party asking for an order to produce, to show the relevancy and materiality of the documents and papers asked for. But that may be shown by attaching to the petition for the order, as a part thereof, a copy of the petition stating the cause of the action.

3. ———: Only Material Matters: Excessive Order. Under the constitutional provision prohibiting unreasonable search and seizure of persons, papers, etc., and by the express provision of the statute, a defendant cannot be compelled to produce papers and documentary evidence in his possession except such as are material to the merits and relevant to the issues of the pending case; and an order of the court to produce more would be an excessive exercise of jurisdiction. Where the petition alleges that plaintiff's husband was a night track-watchman between certain towns on defendant's railroad, that defendant's servants, having reason to know that he was in dangerous proximity to said track, in the nighttime, ran Train No. 6 at a rapid and dangerous speed about one hour after schedule time and without warning to him of the approach of said train and without a headlight sufficient for him to see or know of the approach of said train, and that he was run down and killed, an order directed to defendant railroad company is valid in so far as it compels the company to produce the train-sheets and other papers and records showing the movement of Train No. 6 and the condition of its headlight from seven o'clock to seven o'clock of the night of the injury; but it is void in so far as it requires defendant to produce the train-sheets and papers relating to the movements of all other trains within said hours and the condition of their headlights.

4. ———: ———: ———: Description of Papers. The petition for an order to compel the production of papers, to be inspected and used at the trial, should describe the papers wanted and the relevancy thereof as nearly as the nature of the case will permit. Plaintiff by alleging her husband's injuries were caused by Train No. 6 limited her right to demand papers relating to other trains, and that allegation, for the purpose of the order, cannot be considered as surplusage or as relating to all trains; and even if the allegation had not mentioned any particular train, the order to produce could not be made to apply to every train, but should be confined to particular papers.

## Prohibition.

Writ allowed.

*George J. Mersereau, Thomas R. Morrow, James P. Gilmore, John H. Lathrop* and *Jones & Conkling* for relator.

(1) The order made by respondent Judge Trimble, requiring the production of, and compelling relator to submit, the records and documents in said order mentioned to the said Cora Sells and her attorneys for inspection, and permitting copies to be made therefrom, was void. Said order was made without jurisdiction. The petition upon which it was made was fatally defective and insufficient to confer jurisdiction, for the 'following reasons: (a) Said petition did not state facts showing the materiality of the evidence sought. R. S. 1909, secs. 1944-1948; State ex inf. v. Tobacco Co., 177 Mo. 1; Glover v. Casualty Co., 130 Mo. 173; 14 Cyc. 346; 23 Am. & Eng. Ency. Law, 176; Thompson on Trials, secs. 743-757; Lester v. People, 41 Am. St. 375; Ex parte Clark, 46 L. R. A. 835; Beebe v. Equitable Mutual Ass'n, 76 Iowa, 129; Loan & Trust Co. v. District Court, 149 Iowa, 66; Dorris v. Coal Co., 215 Pa. 638; Iron & Coal Co. v. Iron Co., 104 Ga. 395; Jenkins v. Bennett, 40 S. C. 393; U. S. v. Terminal R. Ass'n, 154 Fed. 268. (b) The petition for the production of the books, papers and documents was not properly verified. R. S. 1909, sec. 1945; Thompson on Trials, sec. 756; 14 Cyc. 350; Fromme v. Lisner, 17 N. Y. Supp. 851; 22 Civil Procedure (N. Y.), 37; Railroad v. Railroad, 53 How. Pr. 45. (2) Under the allegations of the petition of respondent Cora Sells against relator, specifically alleging that Train No. 6 struck and killed her husband, the papers and documents relating to the operation and management of any other train or trains was incompetent and inadmissible; hence, the order, in so far as it called for the production of books, papers and documents relating to any other train than Train No. 6 called for the production of incompetent and immaterial evidence. Ex parte Brown, 72 Mo. 93;

State ex inf. v. Oil Co., 194 Mo. 154.   (3)  The order
requiring relator to produce its records and documents
was a mere fishing excursion—and unlawful invasion
of relator's private rights, and if enforced would or
might impart to and put respondent Cora Sells and
her attorneys in possession of information which they
had no right to possess and in which they have no
concern or interest.  R. S. 1909, secs. 1944-1948; Ex
parte Brown, 72 Mo. 93; Lester v. People, 41 Am. St.
375; Dorris v. Coal Co., 215 Pa. St. 638; Ex parte
Clark, 46 L. R. A. 835; Thompson on Trials, sec. 753;
23 Am. & Eng. Ency. Law, 179.   (4)  The order re-
quiring the production and inspection of relator's pri-
vate papers and documents and permitting Cora Sells
and her attorneys to take copies thereof was an un-
lawful invasion of relator's private rights and vio-
lated the constitutional right of relator to be secure in
its papers and effects against unreasonable searches
and seizures.   4 Amendment Constitution United
States; sec. 11, art. 2, Constitution Missouri; Ex parte
Brown, 72 Mo. 93; State ex inf. v. Tobacco Co., 177
Mo. 1; Lester v. People, 41 Am. St. 375; Ex parte
Clark, 46 L. R. A. 835; Jenkins v. Bennett, 40 S. C.
393; Cassett v. Coal & Coke Co., 10 L. R. A. (N. S.)
99; Hale v. Hinkle, 201 U. S. 43.   (5)  The provisions
of article 12, chapter 21, R. S. 1909, do not authorize
the production of the private books and papers of an
adverse party and to which the party seeking the pro-
duction is not a party and in which he has no interest.
To thus construe the statute would destroy the right
of security in private papers and effects; would de-
stroy the constitutional inhibition against unreason-
able searches and seizures, and bring the statute in
direct conflict with the Fourth Amendment to the Con-
stitution of the United States and section 11, article
2, Constitution of Missouri and thereby render the stat-
ute unconstitutional and void.

_L. H. Woodyard_ and _Busby Bros. & Withers_ for respondents.

(1) The Carroll Circuit Court had full jurisdiction over the damage suit, and full and complete power therein to decide every question attempted to be raised by relator herein; and relator had adequate remedies to correct any erroneous decisions therein; and prohibition cannot possibly be maintained in this case. _a._ If the special order made by Judge Trimble was in anywise illegal, or should not have been complied with, for any of the reasons set up by relator herein, then relator had the right and should have appeared before Judge Trimble on April 9, 1912, and set up such reasons as provided it might do by the special order and by the statute. If the order as to the train-sheets, etc., relating to trains other than train No. 6 was improper for any reason, then relator could have refused to permit an inspection or copy of the train records other than No. 6 and set up its reasons on April 9th. _b._ Or if such train-sheets, etc., relating to trains other than No. 6 were incompetent and inadmissible or should not have been produced for any of the reasons now set up by relator, relator could have objected to their admission in evidence and had any erroneous ruling of the court corrected by appeal or writ of error. Coleman v Dalton, 71 Mo. App. 14; State ex rel. v. Lucas, 236 Mo. 31; State ex rel. v. Stobie, 194 Mo. 14; State ex rel. v. Tracy, 237 Mo. 109; Delaney v. Police Court, 167 Mo. 679. (2) There is no merit in relator's contention that the petition for special orders did not sufficiently allege materiality of the evidence sought, or was not properly verified. If such were true, the same would be only errors in matters of practice which cannot be corrected by prohibition; and otherwise are mere quibbles. The entire petition in the damage suit was attached and referred to and made part of the petition for special

State ex rel..v. Trimble.

orders, and when the allegations of the two petitions are considered, together with the positive allegation in the petition for special orders that such train sheets, etc., "are material to the issues, and admissible in evidence," it was sufficiently alleged that the train sheets, etc., related to the merits of the damage suit as required by the statute. Sec. 1945, R. S. 1909; 17 Am. & Eng. Ency. Law (2 Ed.), 1064; 14 Cyc. 376, note. (3) The burden of proof was on Cora Sells to prove that Train No. 6 killed her husband by running on a dark night, without warning, about one hour late, at a rapid and dangerous rate of speed, without any headlight, so as to enable deceased to know of the approach of the train, etc.; and she was without direct evidence to make out her case, and had to depend upon circumstances. That is, the circumstances showed that deceased was struck and killed about 12 o'clock at night, and the train-sheet, etc., showed that Train No. 6 passed the place of collision at that time, without warning, at a rapid and dangerous rate of speed, and without any headlight lighted up and burning on the front of the engine; and the same train-sheet, etc., would have shown that no other train than No. 6 passed the point of collision at the time thereof, or from 7 o'clock in the evening until 7 o'clock in the morning without the headlight lighted up and burning, so that it was Train No. 6. and none other, that struck and killed Sells. Lead Co. v. Railroad, 123 Mo. App. 398; Railroad v. Stojanowski, 191 Fed. 720; Railroad v. Daniel, 3 L. R. A. (N. S.) 1190; Donovan v. Railroad, 158 Mass. 450; Ins. Co. v. Railroad, 138 N. C. 42. (4) The order does not require unreasonable search or seizure. State ex inf. v. Oil Co., 194 Mo. 126; State ex inf. v. Oil Co., 218 Mo. 1; St. Joseph v. Levin, 128 Mo. 588; Levy v. Superior Court, 29 L. R. A. 811. "This prohibition (in Federal Constitution against unreasonable searches, etc.), is intended to operate upon the national government alone, and not

to limit the powers of the State governments in respect to their own people." 25 Ency. Pl. & Pr. (2 Ed.), 145; 35 Cyc. 1269. "The wider scope of the power of the State over corporations than over individuals affords a basis for a separate classification as to the production of books and papers." Packing Co. v. Arkansas, 212 U. S. 322. "It is within the power of a State to require a corporation doing business therein to produce before a court books and papers kept by it, although at the time the books, etc., may be out of the State." Consol. Rend. Co. v. Vermont, 207 U. S. 541; Hale v. Henkel, 201 U. S. 43. "Compelling common carriers to produce contracts entered into by competing companies and requiring testimony in regard thereto, does not violate the 4th and 5th amendments." Inter-St. Com. v. Baird, 194 U. S. 25.

WOODSON, J.—This is an original proceeding instituted in this court by the relator to prohibit the respondents from compelling the former to produce for inspection, certain records, documents and papers in its possession, pertaining to its business, as evidence in a certain cause pending in the circuit court of Carroll county, wherein Cora Sells is the plaintiff and the relator is the defendant, for the purpose of recovering $10,000, damages sustained by her through the alleged negligence of the company in killing her husband, John Sells.

To the petition for the writ, the respondents filed a return admitting the allegations of the petition, and thereupon the relator moved for judgment on the pleadings.

The facts are substantially as follows:

At the time the petition for the writ of prohibition was filed in this court, a suit was pending in the circuit court of Carroll county, wherein the respondent, Cora Sells, was the plaintiff and the relator, The

Atchison, Topeka & Santa Fe Railway Company, was the defendant, and the respondent, Francis H. Trimble, was the judge of said circuit court.

That suit was based upon the second section of the Damage Act, to recover $10,000 damages, from the defendant, for alleged negligence in killing her husband, on the night of October 15, 1911, near twelve o'clock, at or near the town of Bosworth, on the line of defendant's road.

The amended petition was in two counts. It alleged that Cora Sells was the widow of John Sells and that he was killed by one of the defendant's trains, on the night of October 15, 1911, that said John Sells was in the employ of the company as a night track-watchman, between the towns of Dean Lake and Bosworth, stations on the line of said railway company.

The charge of negligence in the first count, was that the agents, servants and employees of the company, in managing and controlling its passenger Train No. 6, in the nighttime, having reason to know that said John Sells was likely to be upon and in a dangerous proximity to said track, ran said Train No. 6, at a rapid and dangerous rate of speed about one hour after schedule time and without warning to said John Sells of the approach of said train and without a headlight lighted upon and burning on the engine sufficient to enable said Sells to see or know of the approach of said train.

The second count, after restating the formal charges made in the first count, specifically alleges that said Train No. 6 was the identical train that struck and killed plaintiff's husband, and then stated a violation of what is commonly called the humanitarian doctrine, as the ground of negligence, in that said Sells was in a position of danger; that after seeing him or knowing he was in said place of danger, that he was unaware of the near and dangerous approach of said train and unable to remove himself from said

peril, the agents and servants of the defendant negligently failed to give the ordinary signals in time to have averted the death of Sells, and negligently failed to use the appliances at hand to stop or slacken the speed of said train in time to have prevented the injury.

After filing said amended petition the plaintiff, on March the 30th, 1912, gave the defendant notice of her intention to present a petition to the respondent, Judge Trimble, at Liberty, Clay county, praying for a special order to compel defendant to produce and exhibit to plaintiff and her attorneys certain train-sheets and records described to be used as evidence in said cause, as follows:

"(1) Train-sheets at its train-dispatcher's office in Marceline, Missouri, on October 15, and 16, 1911, upon which was noted the arrival and departure of all of relator's trains, especially passenger Train No. 6; the defective condition of the headlight on any of said trains; the cause of the delay of any of said trains at the stations of Carrollton, Standish, Bosworth, Dean Lake and Marceline, from 7 o'clock p. m., October 15, to 7 o'clock a. m., October 16, 1911.

"(2) That defendant also kept operators' train registers at the stations of Carrollton, Standish, Bosworth and Dean Lake on said dates upon which was kept the arrival and departure of all of relator's trains at such stations from 7 o'clock p. m., October 15, to 7 o'clock a. m., October 16, 1911.

"(3) That on said dates relator had certain printed rules in force for the guidance of its dispatchers and agents in relation to keeping a headlight lighted up and burning in the nighttime on its trains and of reporting the absence of such headlight while passing said stations of Carrollton, Standish, Bosworth and Dean Lake."

Without going into the details of the petition praying for the order to produce said records, docu-

ments and papers, it will be sufficient to state that it does not plead any specific facts showing in what way the same would be material to the issues joined in said case. However, it should be added that a copy of the amended petition filed in said cause was attached to and made a part of the petition praying for said order to produce said papers, etc.

Said petition for the order was duly sworn to by Senator Busby, counsel for plaintiff.

Counsel for both the plaintiff and defendant appeared at the time and place named for the presentation of said petition, and thereat counsel for defendant announced to the judge of said court, and to counsel for plaintiff, that it was ready and willing to exhibit to plaintiff and her counsel the train-sheets made and kept by defendant at its train-dispatcher's office at Marceline on October the 15th and 16th, 1911, relating to said Train No. 6, and offered to let them take copies of said sheets, so far as they related to said Train No. 6; also to give to her and her counsel all the information said sheets or train registers imparted with reference to the condition of the headlight, the arrival and departure of said Train No. 6, at Carrollton, Standish, Bosworth and Dean Lake on said dates, which said offer was by plaintiff and her counsel declined, who insisted upon the production of *all of the train-sheets, train registers* and the *printed rules* of defendant in relation to the keeping of a headlight lighted upon and burning on all its said trains from seven o'clock p. m. of October 15, to seven o'clock a. m. of October 16, 1911.

Notwithstanding this offer of relator, the judge of said court made an order directing it to produce all of its train-sheets and train registers regarding all of its trains mentioned in the petition praying for said order, for the purposes therein stated.

Counsel for the defendant, in said cause, the relator here, believing that said order of Judge Trimble

was unreasonable, too broad and sweeping in its command; that the petition praying for said order did not confer jurisdiction upon said court to make the same, and that said order was void and invaded the private rights of the relator and gave said Cora Sells and her attorneys a right and privilege which they were not entitled to under the law of this State, applied to this court for a preliminary rule of prohibition, which was granted.

The formal issuance of the writ was waived by respondents; and after practically admitting the truthfulness of the petition in their return, counsel for relator moved for judgment on the pleadings.

I. Prior to the consideration of the merits of this proceeding, a preliminary question regarding the exercise of this court's discretion in passing upon the merits of this case, has been presented by counsel for respondents, namely: Since the issuance of the preliminary rule of prohibition, a trial of the original cause in the circuit court of Carroll county has been had, and the cause appealed to this court, and for that reason counsel for respondents insist that the questions here presented have become mute propositions of law, and that this court should not waste its time and energies in deciding questions not involved in a living case.

**Moot Case.**

I confess that when this question was first presented I thought that it was well founded and that the preliminary rule theretofore issued should be quashed; but after consulting with some of my learned associates, in the light of the fact that this court had granted counsel time in which to print the record and present briefs and arguments herein; and that during which time, counsel, without intending to waive any of their rights to have this case decided upon its merits, proceeded with the trial of the cause in the circuit court of Carroll county, without the production

and inspection of any of the papers and documents herein mentioned, except those relating specially to said Train No. 6, and which relator in the beginning offered to produce for the inspection of plaintiff and her attorneys at the time said order of the circuit court was applied for, I have somewhat modified my views and am of the opinion that it will do no violence to a sound judicial discretion to dispose of this proceeding upon its merits; especially, since the original cause has not been fully and finally disposed of, but is still pending in this court on an appeal; and more especially since the questions here presented are ever recurring, in the circuit courts throughout the State. For these reasons we have concluded to dispose of this case upon its merits, so as to put the questions here presented at rest.

II. The validity of the order of Judge Trimble, requiring the relator to produce the papers and documents described therein, for the inspec-

Order to Produce Documentary Evidence: Validity: Materiality, How Shown.

tion of counsel and use in the trial of the cause of Cora Sells v. The Railway Company, the relator here, in the circuit court of Carroll county, is assailed for several reasons assigned.

The first is: That the judge of the circuit court had no jurisdiction to make the order complained of, for the reason that the petition praying for said order was fatally defective and insufficient to confer jurisdiction upon the court or judge thereof, for the reason that it did not state facts showing the materiality of the evidence sought.

In support of this contention we are cited to sections 1944 to 1948, Revised Statutes 1909, both inclusive, and to many adjudications of this court and those of other States.

By reading these statutes it will be seen that while the courts of the State are given ample power to com-

pel parties having in their possession papers and doc-
uments, to permit them to be inspected and used in
the trial of a cause, yet by the letter and spirit there-
of, the authority of the court in that regard is limited
to such papers and documents as are material and re-
late to the merits of the case; and clearly the burden of
showing the relevancy and materiality of such evi-
dence to the merits of the case rests upon the party or
parties asking for the order of production. This has
been the uniform ruling of this and other courts of the
country.

This rule is clearly and forcefully stated by Fox,
J., in the case of State ex inf. v. Continental Tobacco
Co., 177 Mo. l. c. 42, and is in keeping with the rulings
of this court in previous and subsequent cases; and
no useful purpose would be served by a review of
them.

Counsel for respondents do not question the
soundness of that rule, but insist that it has no appli-
cation to the facts of this case, for the reason as-
signed, that the petition presented to Judge Trimble,
praying for the order requiring the production of said
papers, had attached thereto and made a part there-
of, a copy of the amended petition filed in the cause,
which, with much particularity, stated the negligence
of the company which resulted in the injury and death
of plaintiff's husband, thereby clearly showing the ma-
teriality of the evidence sought.

To illustrate this proposition, suppose the peti-
tion for the order had never been drawn or presented
to Judge Trimble and that said papers had been vol-
untarily produced at the trial and offered in evidence
under the amended petition on file, would not the ma-
teriality and relevancy of those papers have appeared
upon the face of said amended petition without a spe-.
cial plea of their materiality? That question must be
answered in the affirmative.

Had they been so offered at the trial, Judge Trimble, at a glance, would have seen their materiality and would have admitted them in evidence.

So, from the face of the copy of said petition attached to the motion praying for said order, the materiality of said papers would have appeared and Judge Trimble would with equal facilities have seen, and in fact did see, their materiality by the inspection he made of said copy of the petition when the motion for the order was presented to him at Liberty on March 30, 1912. In other words, the materiality of said papers and documents as clearly appeared from the copy of the petition attached as an exhibit to the petition presented to Judge Trimble for the order for their production, as it would have done from the face of the original petition on file in the circuit court of Carroll county.

I am, therefore, of the opinion that this objection against the validity of the order of Judge Trimble is not well grounded.

III. There is another phase of the objection presented and determined in the preceding paragraph of this opinion which was not mentioned or considered therein, and that is: The petition for, and the order of the court requiring the production of said papers and documents, were too broad, as shown by the face of the petition filed by Cora Sells v. The Railway Company, on file in the circuit court of Carroll county.

This contention of counsel for relator is predicated upon the fact that said petition charges specifically that the husband of plaintiff was struck and killed by passenger Train No. 6, on relator's road at the town of Bosworth, on the night of October 15th, 1911, near the hour of midnight.

Under this specific charge of the petition, counsel for relator insist that the plaintiff, Cora Sells, was only entitled to the train-sheets and registers show-

ing the time said Train No. 6 passed the stations
named in the petition, on the dates stated therein, and
the schedule time thereof, and those furnishing any
information regarding the headlight upon the engine
and the condition of said light, as well as those show-
ing the speed at which the train was running and the
time it arrived at and departed from said stations.
In other words, the plaintiff is entitled to all of the
papers throwing any light upon the condition of Train
No. 6 (the one it is alleged in the petition struck and
killed plaintiff's husband), and the manner in which
it was being operated upon the dates stated, and none
other.

That being true, they further insist that neither
the circuit court of Carroll county, nor the judge there-
of, had authority or jurisdiction to make an order
for the production of any papers or documents relat-
ing to any other train or trains running upon said
road.

In the consideration of this proposition it must
be borne in mind that the authority of the circuit court
to require the parties to a suit at law to produce rec-
ords, books, documents and papers in the courts of
this State, is purely statutory, and never existed at
common law in so far as I have been able to discover,
after a somewhat careful investigation of the subject,
barring, of course, certain equitable proceedings which
have no application to this or kindred cases.

With that thought in mind, counsel for relator
insist that that part of the order of Judge Trimble
requiring it to produce those papers and documents
not relating to passenger Train No. 6, for inspection
by plaintiff and her attorneys and for use in the cir-
cuit court of Carroll county, is absolutely null and
void, and not merely voidable, because neither the
court nor the judge thereof had any authority to
make it.

After due consideration of the question I am satisfied that this insistence of counsel is well founded.

In approaching this question it should also be remembered that both the State and Federal Constitutions have thrown certain safeguards around the security of persons, their papers, homes and effects, which cannot be lawfully invaded by the Legislature, the Congress or the courts of the country.

Those provisions of the Constitutions are section 11 of article 2 of the Constitution of Missouri adopted in 1875, and the 4th Amendment of the Constitution of the United States.

Recognizing those constitutional injunctions, which forbid all "unreasonable" search and seizure of persons, papers, etc., our Legislature has by sections 1944 to 1949, Revised Statutes 1909, undertaken to define what are reasonable searches and seizures, etc., within the meaning of those constitutional provisions, and has limited the authority of the courts of this State to compel the production of only such books, records, papers and documents for inspection and use in the trial of causes, as are relevant and material to the issues involved in each particular case, and has, by implication at least, forbidden, as said constitutional provisions have done, the compulsory production of all books and papers not affirmatively shown to be relevant and material to the issues joined and the merits of the case.

If this is the meaning of those sections of the statute, then the Legislature was clearly exercising its lawful functions by authorizing the courts of the State to compel the production of all books, records, documents and papers relevant to the issues of a case on trial, or to assist in the preparation of such a trial, excepting, of course, such as might incriminate the party required to produce them. This exception, however, does not include corporations. [State ex inf. v. Standard Oil Co., 218 Mo. 1, and cases cited.]

Upon the other hand, if we have not correctly construed said statutes, then they would clearly fall within the prohibition of our Constitution, if not that of the Federal, which may refer only to the United States Courts, as I have not had time to fully investigate.

Believing, however, that we have correctly construed said statutes, we will now return to the order of the judge of the circuit court of Carroll county, mentioned in the statement of this case, and see if it controverts the provisions thereof.

By referring to the order it will be seen that the judge did not limit his order upon relator to produce the train-sheets and train registers, etc., showing the schedule of Train No. 6, between and at the stations mentioned in the petition of Cora Sells; the time it arrived at and departed from those stations; the rate of speed it was running; and those that disclosed any information regarding the headlight upon the engine, and as to the condition of the light at the time of the injury; but it included and required the production of all such papers and records that related to all trains of relator that passed over its road at the stations mentioned and between the hours referred to, upon the days named.

This was clearly an excessive exercise of judicial authority, and the order should have been limited to the papers and documents relating to Train No. 6, which relator voluntarily offered to produce. To this extent and to this extent only, was plaintiff entitled to inspect and use the papers and records of the relator; and relator having voluntarily offered all that Cora Sells and her attorneys were legally entitled to, Judge Trimble should either have refused the order as prayed for, or he should have limited it to those papers which related to Train No. 6.

An excessive exercise of judicial authority is just as offensive to the law as is an absolute usurpation

of jurisdiction of the court over cases not committed to its consideration. [State ex rel. v. Scarritt, 128 Mo. 331; State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Elkin, 130 Mo. 90.]

Counsel for respondent Cora Sells insist that the conclusions just announced are too narrow a construction to be placed upon the statutes mentioned, in that it was not necessary for the plaintiff to have specifically stated what train of relator struck and killed her husband, and therefore, it might be considered as surplusage.

Considering that this insistence might be true, if the relator was not misled thereby, and prevented from making a proper defense to the suit, still that fact does not reach the question here presented, for the reason that the constitutional provision and the statutes under consideration require that in order to authorize the issuance of such a warrant or order, the petition therefor must describe the papers wanted and the relevancy thereof as near as the nature of the case will permit and must be supported by affidavit.

In the case at bar the record shows that the plaintiff in her petition filed in the circuit court of Carroll county, chose to limit the charge of the injury done to her husband to the carelessness and negligence of the agents and servants of relator, in the management and operation of said Train No. 6, which was made a part of the application for the order, and having so made her bed, she must lie in it.

While we do not mean to hold that the plaintiff in that case should have so specifically named the train that struck and killed her husband, yet having done so, she is thereby limited in her right, to demand the papers relating to that train alone.

This ruling is in harmony, not only with the constitutional provision and statutes mentioned, but is in keeping with the general rule upon the subject in force throughout the country, which requires that a

person who wants his adversary to produce books and papers in court to be used as evidence in a case, must in his application for the order to produce them, describe the same and the relevancy thereof, as near as the nature of his case will permit, and the order of the court must conform thereto; that is, it should be no broader, but should be more limited, if the nature of the case will permit of it, and thereby secure unto individuals and corporations the privacy of their personal affairs, that do not concern others or relate to the merits of the case on trial.

In no case should the trial court make a broad-sweeping order, such as we have under consideration.

This order would not only expose to view the individual and private affairs of relator, but it would require much time and the services of several employees and no little expense, to produce all of the papers and documents ordered to be produced for inspection by plaintiff and her attorneys and to produce them in court at Carrollton to be used as evidence in the case, and that, too, when but few of them would be material or relevant to the issues, and might be needed at any moment by relator in the operation of its road.

We are, therefore, of the opinion that this insistence of counsel for respondent is not well founded, and should be ruled against them.

IV. Counsel for both parties have presented and discussed different phases of the questions presented and determined in the previous paragraphs of this opinion, but in our opinion, the disposition of the case, as therein stated, necessarily disposes of all the material questions presented.

We are, therefore, of the opinion that the preliminary rule of prohibition heretofore issued should be made permanent; and it is so ordered. All concur, except *Bond, J.,* who dissents as to paragraphs 3 and 4 and the result.