STATE OF MISSOURI at the Relation of ST. LOUIS UNION TRUST COMPANY and MILES A. HINTON, Relators, v. EUGENE J. SARTORIUS, Judge of the Circuit Court of the City of St. Louis.—No. 38338.—171 S. W. (2d) 569.

Division Two, March 25, 1943.

Rehearing Denied, June 7, 1943.

112

*Lowenhaupt, Waite & Stolar* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for relators.

*Spencer M. Thomas* and *Harry Gershenson* for respondent.

BARRETT, C.—Upon the application of the St. Louis Union Trust Company and Miles A. Hinton our preliminary rule in pro-

hibition was issued, restraining Honorable Eugene J. Sartorius, Judge of the Circuit Court of the City of St. Louis, from proceeding further in the case of Charles Wesley Nail against the St. Louis Union Trust Company and others. He was specifically prohibited from enforcing a subpoena duces tecum issued on August 13, 1942. Judge Sartorius filed his return and the question, upon the relators' motion for judgment on the pleadings, is whether the rule in prohibition should be made permanent or discharged.

Nail brought suit against the trust company and others, claiming that he rendered certain services to William G. Yantis, from 1894 until his death in 1942, and that in July, 1939, Mr. Yantis, in consideration of the services rendered, promised and agreed to "give, bequeath and devise" to Nail all of his stock in the Shapleigh Hardware Company but that Mr. Yantis, by the will filed for probate in 1942, breached the agreement which he was entitled to have specifically performed.

After the suit was instituted and before the defendants had filed any pleadings Nail filed an amended, verified motion asking that the trust company be required to produce for his inspection, with the right of copying, a "paper writing" executed by Mr. Yantis in 1940. The motion, in part, says that the trust company "is in possession of a certain paper writing, executed in the year, 1940, by William G. Yantis, now deceased, as a Last Will and Testament; that said paper writing contains evidence relating to the merits of this action and material to the issues thereof, in that the said paper writing contains statements by said decedent tending to show his feeling, affection and intentions toward plaintiff and defendants herein at the date thereof; and more specifically, in that said paper writing dated in 1940, shows the intention of said decedent to leave to Frances Williams the property of decedent at 5077 Westminster Place, St. Louis, Missouri, while under the provisions of the paper probated in the St. Louis Probate Court on May 1, 1942, said decedent leaves his entire residuary estate to said Frances Williams."

The court sustained the motion, permitting the plaintiff to inspect and copy "that portion or portions of the paper writing . . . referring to or mentioning or making any provision for the plaintiff in the above entitled cause."

The trust company filed no response to the plaintiff's motion but did file what it denominates a return to the court's order, stating "that it has not in its possession and never has had any paper writing dated in 1940 and executed by William G. Yantis as his will at said time which contains the name of said plaintiff, Charles Wesley Nail, or which refers to or mentions or makes any provision for said Charles Wesley Nail."

The plaintiff then filed a motion to strike the trust company's return from the files for the reason that the court had ordered it to

produce the writing for inspection and its return was, therefore, not responsive to the court's order nor to any issue then involved in the case. Before the court passed on this motion the plaintiff filed an application reciting further demands on the official of the trust company in charge of such documents for permission to inspect the writing and asked that the court cite the trust company and the official to show cause why they should not be punished for contempt for refusing to [572] comply with the court's order. The court fixed August 21, 1942, as the date for hearing both the motion and the application and at the same time, in response to the plaintiff's written application, ordered the issuance of a subpoena duces tecum to the trust company and its officer custodian of the document in question. The subpoena commanding the appearance of the officer and his production of the writing on August 21, 1942, was duly and properly issued and served.

The trust company and its official then filed a motion to quash the subpoena duces tecum. This motion contains a recital of the matters set forth in its return to the court's order to produce and assigns as grounds for quashing the subpoena that (1) a subpoena duces tecum is not the proper procedure to procure the inspection of documents in the possession of the parties to the cause.; (2) no sufficient basis for the issuance of the subpoena is set forth in the application for it, and (3) the defendant could not be in contempt of the court because it was proven that no part of the document ordered produced referred to the plaintiff and unless the plaintiff denied its response by affidavit there was no issue as to the existence of that fact and the paper was not then material to the cause. The court overruled the motion to quash the subpoena duces tecum and indicated its intention of proceeding with the hearing on August 21 and the defendants instituted this proceeding.

The return to the preliminary rule in prohibition denies that the relators had complied with the court's order to produce the writing but instead filed what it called a "return" to the order. The return recites the issuance of the subpoena duces tecum for the purpose of determining whether the court's order of inspection had been complied with and says the "production of said instrument is essential and material to the trial and hearing of the issues upon the said motion to strike and motion for citation for contempt." The return also claims the jurisdiction, power and authority to issue the subpoena and denies that its action invades the relators' rights in any respect and says that this court's further interposition in the cause is an unwarranted interference with the trial court's discretion.

The relators contend that Mo. R. S. A., Secs. 1075 to 1079, inclusive, provide the only procedure by which the opposing parties may be compelled to produce documents for the inspection of their adversary and that by those sections the burden of proof is upon the applicant

to show that the party has the document sought and that it contains evidence relating to the merits of the principal action; that production will not be compelled when the adversary party denies under oath that he has the document or that it is material to the case. The relators argue that if one is compelled in any manner other than that provided in Sections 1075 to 1079 to produce such a document his constitutional right against unreasonable searches and seizures is violated. The relators further contend that the court's issuance of the subpoena duces tecum was an invalid and unconstitutional exercise of its judicial power and should be prevented because the statutes (Secs. 1075-1079) provide the exclusive manner by which the production of documents may be compelled and that an inspection of such documents cannot be had by the indirection of a citation for contempt and a subpoena duces tecum for such a hearing.

█ Nail claims that over a period of years he rendered certain valuable services to Mr. Yantis and that in return for those services Mr. Yantis promised and agreed to compensate him by willing him certain property. He says Mr. Yantis failed to keep his bargain and instead left a will which does not devise the promised property. The object of his suit is to compel specific performance of the alleged contract. If Mr. Yantis made such an agreement he was obliged to carry it out. Finn v. Barnes, 340 Mo. 445, 101 S. W. (2d) 718; Burnett v. Hudson (Mo.), 228 S. W. 462. He could not escape the consequences of his bargain by a subsequent will ignoring the contract. 68 C. J., Sec. 192. If Mr. Yantis executed a prior will providing for the plaintiff or devising him certain property and such a will is in existence, though revoked by the will probated, it would certainly be some material evidence of the existence of the contract and its breach as well. 4 Page, Wills, Sec. 1753; 68 C. J., Sec. 212.

█ If such a will is in existence and in the relators' possession it was certainly the court's duty, as well as his power and right, to compel it production for Nail's inspection. The statutes specifically confer the authority in such instances. "Every court or judge thereof shall have power to compel any party to a suit pending therein to produce any books, papers and documents [573] in his possession or power, relating to the merits of any such suit, or. of any defense therein." Mo. R. S. A., Sec. 1075. The limitation on the court's power in this respect is twofold only; the paper sought must be in the party's possession and it must be material to the merits of the action. And as to these the applicant for the compulsory order to make discovery has the burden of showing, by a statement of the facts and not by mere legal conclusions, that the documents or papers he desires produced for his inspection contain evidence which is relevant and material to the issues involved in the pending controversy. State ex rel. Missouri Broadcasting Co. v. O'Malley, 344 Mo. 639, 127 S. W. (2d) 684; State ex rel. Schlueter Mfg. Co. v. Beck, 337 Mo. 839,

85 S. W. (2d) 1026; State ex rel. Missouri Pac. Ry. Co. v. Hall, 325 Mo. 102, 27 S. W. (2d) 1027; State ex rel. Page v. Terte, 324 Mo. 925, 25 S. W. (2d) 459; State ex rel. Atchison, T. & S. F. Ry. Co. v. Trimble, 254 Mo. 542, 163 S. W. 860.

The relators do not question these principles but object to the manner in which they were applied. They contend that because they filed a return to the court's order, stating that the document in their possession did not mention or provide for Nail, rather than producing the paper as ordered, that they have thereby demonstrated the immateriality of the will to the cause before the court and could not, therefore, be compelled to comply with the court's command. The difficulty with the relators' contention is that the court followed the procedure provided by the statutes. The prerequisite to a party's obtaining an order for discovery is that "he shall present a petition, verified by the affidavit of himself or some other credible person, to the court . . . upon which an order may be granted by such court . . . for the production of such books, papers and documents, or that the party show cause why the prayer of the petition should not be granted." Mo. R. S. A., Sec. 1076. Here the verified petition was filed and the order to make discovery was made, so the record recites, after argument of counsel on "his amended motion" and after "the court having seen and examined the same and being sufficiently advised." True, under the last clause of the statute, rather than making the order to produce, the court could have made an order "that the party show cause why the prayer of the petition should not be granted," (Mo. R. S. A., Sec. 1076) but it did not do so and it does not appear that the relators made such a request. A hearing was had and upon the basis of that hearing on the petition the order was made. State ex rel. Pieper v. Mueller, 227 Mo. App. 1101, 59 S. W. (2d) 719. We do not know what evidence, if any, was then before the court, but presumably there was some reasonable basis for the court's action. 21 C. J. S., Sec. 237. The court does not order discovery in conformity with the prayer of Nail's petition which probably asks for evidence which would not be material to and involved in the cause. State ex rel. Schlueter Mfg. Co. v. Beck, supra. But, the plaintiff's petition in the principal suit, the substance of which the relators have set forth in their application for prohibition, was addressed to and on file before the court and whatever else may have been present to demonstrate the materiality of the evidence called for by the court's order, it was obvious to the court from the petition that if such evidence existed it was material. State ex rel. Missouri Broadcasting Co. v. O'Malley, supra; State ex rel. Atchison, T. & S. F. Ry. Co. v. Trimble, supra.

The relators did not file a return to Nail's petition for discovery but instead filed what it calls a return to the court's order, in which they seek to excuse their failure to comply with the court's

order merely by reciting the order verbatim and saying in the negative of the order that "it has not in its possession and never has had any paper writing dated in 1940 and executed by William G. Yantis as his will at said time, which contains the name of said plaintiff, Charles Wesley Nail, or which refers to or mentions or makes any provision for said Charles Wesley Nail." Aside from the fact that this was not a response to the court's order and may be the author's conclusion of the fact only, there is no provision in the statutes for such a pleading or such an excuse. The excuses or provisions for vacating the court's order of discovery are: "First, upon satisfactory evidence that it ought not to have been granted; second, upon the party required to produce the books, papers and documents denying, on oath, the possession or control thereof." Mo. R. S. A., Sec. 1077. The court had set Nail's motion to strike this pleading from the files and the contempt citation for hearing and undoubtedly, after that hearing, the court would have determined, certainly from his [574] inspection of the document, whether it contained any provisions mentioning or providing for Nail. At that time "satisfactory evidence" might have been produced, completely convincing the court that the order should not have been made in the first place. Note that the relators do not deny possession and custody of the paper ordered produced, which is the second statutory excuse calling for a vacation of the court's order, but they merely deny possession of one containing such provisions as are called for by the court's order.

Under our statutes the court is not only empowered to order discovery of evidence material to the cause but he is also invested with a "discretion" to do so (Mo. R. S. A., Sec. 1079) and we cannot interfere with his exercise of that power unless it clearly appears that he has abused his discretion and ordered discovery in such a manner as to violate the relators' fundamental rights. State ex rel. Page v. Terte, supra; State ex rel. Schlueter Mfg. Co. v. Beck, supra. The relators do not deny possession and custody of the paper which they have been ordered to produce and if it does, in fact, mention or provide for Nail it is material to the controversy before the court and its forced production would not infringe their constitutional right against unreasonable search and seizure. Our statutes relating to the production of books and papers by parties to pending suits are a modern conception enacted for the purpose of supplanting the outmoded bill of discovery and are "necessary to the administration of justice under modern social and economic conditions." State ex rel. Schlueter Mfg. Co. v. Beck, supra.[1] They facilitate and expedite the

---

[1]For a full and complete review of the history of discovery, the statutes supplanting it and the present conception of the right to discovery in certain instances not provided for by our statutes see Judge Ellison's opinion in State ex rel. Schlueter Mfg. Co. v. Beck, supra, and Article 8 of the Proposed General Code of Civil Procedure, as well as Rules 34 and 35 of the Federal Rules of Civil Procedure.

preparation of cases for trial and, in a measure, guard against undesirable surprise and delay. State ex rel. Pieper v. Mueller, supra. Though instancing a more liberal policy they do not, of course, permit an unbridled investigation or "fishing expedition" into an adversary's books and papers. Federal Trade Commission v. American Tobacco Co., 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696. They recognize the constitutional declaration that "the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." Const. Mo., Art. 2, Sec. 11; Const. U. S. Amend. IV. For that purpose—in the administration of justice—a limited invasion, in a limited manner, of one's fundamental rights is permitted. By these statutes (1075-1079) our General Assembly has defined and permitted *reasonable* searches and seizures of books, papers and documents in the possession of parties to a pending cause when containing evidence material to the cause and of these seizures the relators may not complain. State ex rel. Missouri Broadcasting Co. v. O'Malley, supra; State ex rel. Atchison T. & S. F. Ry. Co. v. Trimble, supra.

The relators' contention, that the court should be prevented from enforcing production of the paper by the subpoena duces tecum, is based upon the argument that the statutes (1075-1079) provide the exclusive method by which discovery may be compelled and the court's issuance of the subpoena in a contempt proceeding is an indirect exercise of unauthorized judicial power.

In the first place, the discovery statutes provide penalties for neglect, failure or refusal to obey the court's order to produce books, papers and documents material to the cause. If a party neglects, fails or refuses to comply with an order to make discovery the court may nonsuit him, strike his answer from the files, debar him of a defense relating to the questioned document, book or paper or the court "may punish him as for a contempt." Mo. R. S. A., Secs. 1078 and 1079. As we have said, Nail filed a motion to strike the relators' "return" to the court's order from the files because it was not responsive to and in compliance with the order. He made a further demand of the trust company to exhibit the paper and upon its continued refusal to comply with the court order moved that the relators be cited for contempt. The court set a date for hearing both the motion and the contempt proceeding and in his return states that the appearance of the trust official subpoenaed and the production of [575] the paper called for by the subpoena were material and essential to the trial and hearing of the motion and the contempt proceeding. As we have indicated, from this record, the trial court properly found the paper to be material to the principle case and ordered its production. The relators have persistently refused to comply with the court's order to produce the paper and, of course, if it should now appear that it does in fact provide for or mention Nail it would certainly be material in the contempt proceeding and on the motion

to strike as well and the court could justly assess one of the penalties provided in the statutes by punishing the relators as for a contempt.

In the second place, the court was possessed of inherent power to issue the subpoena duces tecum summoning the witness and commanding his production of the paper writing executed by Mr. Yantis in 1940. State ex rel. Tune v. Falkenhainer, 288 Mo. 20, 231 S. W. 257; 70 C. J., Sec. 34. When a question similar to the one involved here was before the court Judge Lamm answered it thus: "That the court had power to issue a subpoena duces tecum to compel not only the appearance of a witness but the production of papers as an essential precedent step leading up to the trial and in preparation therefor, goes as of course. It is an ancient prerogative of courts, time-honored and by no means mildewed. That the court, before compelling parties to announce for trial, may ascertain whether its process has been obeyed is not only common sense, but is a usage as old as the existence of courts and is one needing no defense. To this end witnesses are called prior to announcement for trial. To call for the presence of documents ordered produced by a subpoena duces tecum in nowise differs in essence and quality from a call of witnesses themselves." Shull v. Boyd, 251 Mo. 452, 473, 158 S. W. 313, 318. While the application for the subpoena does not fully state the facts and point out in detail and with particularity how they are material to the proceedings then before the court, it recites that the motion and contempt proceeding have been set for a certain time and that the relators have in their possession a paper writing "dated 1940, executed by William G. Yantis at said time as his Last Will and Testament; that said paper writing is material and necessary in support of plaintiff's said motions and in the disposition thereof" which, in view of what had occurred before in the case and the issues likely to be involved in the contempt proceeding was sufficient in that respect. Ex parte Brown, 72 Mo. 83; State ex rel. Ozark Cooperage & Lbr. Co. v. Wurdeman, 176 Mo. App. 540, 158 S. W. 436.

The provisional and preliminary rule in prohibition is, therefore, discharged. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.