State of Missouri ex rel. Kansas City Public Service Company, a Corporation, Relator, v. Hon. Ray G. Cowan, Judge of Division Seven and Lately Presiding Judge of the Circuit Court of Jackson County, Missouri, at Kansas City, and Hon. Paul A. Buzard, Judge of Division Eight and Presiding Judge of Said Circuit Court, and Chester D. Luton, a Minor By His Next Friend, Elsie G. Swift, Party to be Adversely Affected.—No. 40308.— 203 S. W. (2d) 407.

Court en Banc, June 9, 1947.

Rehearing Denied, July 14, 1947.

*Charles L. Carr, William A. Kitchen, Alvin C. Trippe, Hale Houts* and *Hogsett, Trippe, Depping & Houts* for relator.

676

*E. E. Thompson* and *Charles V. Garnett* for respondents.

HYDE, J.—This is an original proceeding in prohibition seeking to prevent enforcement of an order requiring relator to answer the following interrogatories:

"1. Directing your attention to the casualty described and referred to in plaintiff's petition filed herein, did the operator of your street car obtain the names and addresses of any persons known by him to have been present at the time and place of the casualty by being found then and there by said operator upon said street car?

"2. If your answer to Interrogatory No. 1 is in the affirmative state the names and addresses of such persons.

"3. Did your said operator obtain the names and addresses of any persons known by him to have been present at the time and place of.

the casualty by being found then and there by him other' than upon your said street car?

"4. If your answer to Interrogatory No. 3 is in the affirmative state the names and addresses of such persons.

"5. Did any person or persons in your employ other than your operator, obtain the names and addresses of any persons present at the time and place of the casualty by being found then and there by any such employee?

"6. If your answer to Interrogatory No. 5 is in the affirmative state the names and addresses of such persons whose names and addresses were so obtained."

 These interrogatories were asked in a wrongful death case involving a collision between relator's street car and a truck, which was driven by Ben H. Luton (who was killed) father of the plaintiff Chester D. Luton, a minor. Relator admits that we held Question No. 1 to be proper in State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S. W. (2d) 907. It, however, seeks a reconsideration of the Williams case, arguing that it should only be required to disclose the names of persons on the car who were actors in the casualty and not mere observers of it. It also says this question was too broad (making the same contention as to 3 and 5) because it was not limited to names and addresses of persons then personally known to its operator. It argues that asking for names of persons not personally known to its operator calls for hearsay. Relator says this contention was not passed on in the Williams case. Other matters ruled in the Williams case are re-argued, as hereinafter noted.

We adhere to our ruling in the Williams case that Question No. 1 was proper. We think it is always proper to ask any eyewitness to the occurrence, involved in a case, who else was present. This is material to fix the time and place and surrounding circumstances, and as said in State ex rel. Evans v. Broaddus, 245 Mo. 123, 149 S. W. 473, "to identify and earmark the transaction." We know of no case holding that this question would be competent, relevant and material only if the inquiry is made as to whom the actors were in the occurence, and relator cites none. Nor do we think there is any merit in the objection that relator should not be required to disclose the names and addresses listed by its operator on the ground that this is hearsay unless these people were personally known to him at that time. The operator does know that he found such person there who gave him a certain name and address. After all, a name is only what one calls himself for purposes of identification. [See 45 C. J. 367, Sec. 1.] One usually keeps the name his parents gave him, but he is free to change it if he wishes to do so. [See 38 Am. Jur. 600, Secs. 11 and 28; 45 C. J. 376, Secs. 12-15.] The information as to the name of anyone must always come either from him or some one else who knows him. It was said in Toletti v. Bidizcki (Conn.), 173 Atl.

223, 224: "The statement by a person of his name, like his statement of his age, is in the nature of hearsay evidence in the sense that the source of information is what has been told to him at some time by others, but such statements are universally relied upon as a source of knowledge both in the ordinary affairs of life and in the every day business of the courts"; citing 1 Wigmore Evidence (2d Ed) Section 667; See 2 Wigmore (3rd Ed) 788, Section 667(a). In the Toletti case, a witness was allowed to identify the defendant as the man who made certain admissions about the agency of his driver, by saying that defendant at that time told him his name, although he had never seen him before. Wigmore says of thus obtaining one's name, "though it may be hearsay, as a source of information, yet it is universally relied upon as a source of knowledge"; and that "courts have commonly accepted the testimony founded upon it." We think this is plain common sense and good law. We hold that the court had authority to require defendant to answer Questions 1 and 2.

We likewise see nothing wrong with Question 3. It does not go beyond the scope of Question 1 because it is confined to "persons known by him (the operator) to have been present at the time and place of the casualty." Therefore, it is within our ruling in the Williams case. This question could include actors in the occurrence, whose names relator admits should be disclosed; for example, in the case of a collision, the driver of the other vehicle. Under our rulings it would also include passengers in the other vehicle. If there should be a collision between one of relator's street cars and busses, the operator of one might well obtain the names of all the passengers on both before they left the vehicles involved. Of course, if the operator got names of persons in the street who were not "known by him to have been present at the time and place of the casualty" there would be no duty to disclose them. Therefore, if the only persons found at the scene by the operator outside his car (or the other vehicle involved) were not known by him to have been present at the time and place of the casualty, relator's proper answer to Question 3 would be "no." We hold that the court had authority to require relator to answer Questions 3 and 4.

Relator makes constitutional objections to all these questions, which we consider to be without merit, namely: that the interrogatories constitute unlawful search and seizure of relator's personal, private and confidential property in violation of the Fourth Amendment to the Constitution of the United States and Section 15 of Article I of the Constitution of Missouri 1945, and deprive relator of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and Section 10 of Article I of the Constitution of Missouri 1945; citing State ex rel. Atchison, T. & S. F. R. Co. v. Trimble, 254 Mo. 542, 163 S. W. 860, and State ex

rel. Missouri Broadcasting Co. v. O'Malley, 344 Mo. 639, 127 S. W. (2d) 684. The Trimble case held that an order which required production of papers, not material to the case alleged in the petition, was invalid on these constitutional grounds. In the O'Malley case we denied prohibition against an order for inspection because the petition did show the books sought to be material. In State ex rel. Iron Fireman Corporation v. Ward, 351 Mo. 761, 173 S. W. (2d) 920, we held that an order for inspection of documents (where there was "some basis for an inference that the paper contains material evidence") did not violate any constitutional rights. We said therein: "The modern trend has been to broaden the scope of discovery to the end that litigants may have the opportunity to ascertain and present at the trial all the material facts not protected by privilege."

Relator concedes that interrogatories under the Federal Rules are much broader in scope; and their validity is well established. In Hickman v. Taylor, (U. S.), 67 S. Ct. 385, 91 L. Ed. 330, the Supreme Court said that "public policy supports reasonable and necessary inquiries"; and stated the limits of such inquiries. The right of discovery is too ancient and has ▆▆▆ had too long a history in its development in equity to be questioned now on such constitutional grounds. It has also been said "that when a party seeks relief in a court of law, he must be held to have waived any privilege, which he otherwise might have had, to withhold testimony required by the rules of pleading or evidence as a basis for such relief." [Fleming v. Bernardi, 1 F. R. D. 624.] Likewise, "the search and seizure clause of the Fourth Amendment was not intended to interfere with the power of the courts to compel, through a subpeona duces tecum, the production, upon a trial in court, of documentary evidence"; and "an order for the production of books and papers which limits the examination to such matters as are pertinent to the issue, does not infringe the constitutional guaranty against unreasonable search and seizure." [47 Am. Jur. 538, Sec. 58, and as to corporate records see Section 59; however, as to incriminating documents, see 17 Am. Jur. 22, Section 30; see also State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. 111, 171 S. W. (2d) 569; State ex rel. Schlueter Mfg. Co. v. Beck, 337 Mo. 839, 85 S. W. (2d) 1026.] We hold that the same rules apply to interrogatories.

▆▆ Relator also re-argues its contention in the Williams case, decided in our opinion on its motion for rehearing therein, that all of these questions call for hearsay because the names sought were taken by mere employees and not "by an officer, director, etc. (of relator) . . . competent to testify in its behalf." [For discussion on answering interrogatories see 1 Carr—Missouri Civil Procedure, 700-708, Sec. 782.] It says that in the Williams case we overlooked the words "competent to testify." Relator argues that its officer, director or managing agent who is required to answer is not

"competent to testify" as to what persons were present on its car at the time of the casualty because he would have to obtain this information by hearsay. However, relator's construction of Section 85 is too narrow. The interrogatories are addressed to parties and not to individual witnesses who are not parties. As applied to a corporation, it does not mean that the officer answering for it must be competent to testify to the truth of facts, shown by documentary evidence, such as required reports in its files and records. He is answering for the corporation and not for himself, as was likewise true on bills of discovery in equity from which interrogatories to parties developed. [See 17 Am. Jur. 26, Sec. 39; 27 C. J. S. 17, Sec. 10; for similar application of Federal Rule 33 see Holler v. General Motors Corp., 1 F. R. D. 296; Eiseman v. Pennsylvania R. Co., 3 F. R. D. 338; Terrell v. Standard Oil Co., 5 F. R. D. 146; De Bruce v. Pennsylvania R Co., 6 F. R. D. 403.] It has even been held that interrogatories to United States are proper, when it is the adverse party, over the objection that the answers should be "based on personal knowledge and not hearsay." (United States v. General Motors Corp., 2 F. R. D. 528; see also 6 Cyc. of Fed. Procedure 805, Sec. 2272.) The party serving such interrogatories on a corporation should have the right to designate therein a particular officer whom he desires to answer the interrogatories or to leave it with the adverse party to select an officer to make the answers. [See 2 Moore's Federal Practice 2623, Sec. 33.04 and 1946 Supplement, p. 221.] This is the purpose of our Rule 3.19. It was possible to find out what any corporate officer personally knew, long before the adoption of Section 85 of our new Code, by taking his deposition. We reaffirm our ruling in the Williams case on this point, and hold the first four questions to be proper interrogatories.

However, Question 5 is not proper because it is not like the other questions confined to persons "known to have been present" by any such employee (other than the operator) of relator. It is not enough to designate the persons whose names are sought only as "present at the time and place of the casualty" or as being found there, because the matter of whether or not they were actually present at the time of the occurrence would be left to hearsay. This question does not even ask if any of relator's employees (other than its operator) were themselves present at the time and place of the casualty so that they could know whether any persons were present other than the occupants of the two colliding vehicles. (In this case all of those in the truck were killed in the collision.) Thus this question seeks to obtain information obtained by defendant's employees, who might not have been present at the occurrence, from persons whose presence there would be known to them only by hearsay. We have held this to be beyond the proper scope of interrogatories both in the Williams case and in State ex rel. Thompson v. Harris, 355 Mo.

176, 195 S. W. (2d) 645. We, therefore, hold that the court was without authority to require relator to answer Questions 5 and 6.

The order of the Circuit Court was proper in so far as it required relator to answer the first four questions. Since Question 5 was beyond the scope of interrogatories under our Code provisions (as was Question 6 subsidiary to it), this part of the order was in excess of the Court's authority and jurisdiction.

Therefore, our rule is made absolute to prohibit respondent judge from requiring answers to Questions 5 and 6, and in all other respects, our rule is discharged. All concur.